The State of Montana ex rel. WILBUR D. VISSER and JAKE KROON, Plaintiffs and Respondents, v. THE STATE FISH AND GAME COMMISSION of the State of Montana and Frank Dunkle as Director of the State Fish and Game, Defendants and Appellants.

No. 11341.
Submitted January 8, 1968. Decided February 5, 1968.
437 P.2d 373.

Chadwick Smith (argued), Helena, McKinley Anderson, Bozeman, for appellants.

Lyman H. Bennett, Jr. (argued), Bozeman, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of

fact and conclusions of law finding that the defendant appellant, State Fish and Game Commission, wrongfully confiscated and sold two elk belonging to plaintiffs and also, from a peremptory writ of mandate which issued, ordering the Commission to pay to plaintiffs the reasonable value of such elk and reasonable attorney's fees. The lower court proceedings were held in the district court at Bozeman, the presiding judge sitting without a jury.

Early in the morning of January 13, 1967, a hunting party set out from a place known as the Rainbow Ranch in Gallatin County, Montana. The members of the party were the plaintiffs Visser and Kroon, Floyd Thomas, and a licensed guide known as Duke Hobart. Unknown to the other three men, Floyd Thomas was a game warden in plain clothes sent to the area to investigate suspected illegal hunting practices of the guide Hobart. Hobart was charged with the illegal killing and plead guilty. No charges were filed against either Visser or Kroon.

This was during a special elk hunting season called by the Montana Fish and Game Commission. Visser and Kroon each had a valid license to kill an elk on that particular day. Hobart did not.

The party hunted, with Hobart on horseback, and the other three men on foot. At about 10:45 a. m., Hobart was over a rise and out of sight of the three other men when they heard some shooting. Almost immediately thereafter, the horse that Hobart had been riding came running, riderless, toward the three men. Visser caught the horse, mounted, and in the company of Kroon and Warden Thomas, proceeded toward the area of the shooting.

They met Hobart and asked him if he had shot anything. He said that he had dropped one elk and thought he had wounded another. From this point Visser, who was on the horse, proceeded to circle the area where the elk were believed to be. The other three men proceeded on and came upon the animal

Hobart had dropped. Its back was broken, but it was still alive. Hobart shot it again from close range and killed it. The three men then field-dressed the animal and Mr. Kroon placed his elk tag on the carcass.

While the three were cleaning the first elk two more appeared. The guide, Hobart, picked up his rifle and dropped one of these about 250 yards from the first elk he had killed. This elk also had its back broken, it was alive but could not move. Visser came upon this animal and cut its throat. The animal was field-dressed and Visser placed his tag on the carcass.

The party then set out in pursuit of the elk Hobart had wounded at the time he killed the first elk. Hobart, being on horseback, got to the animal first and killed it at about 1:00 p. m. Meantime, unknown to the others, Warden Thomas confiscated each elk by placing a confiscation tag on each carcass. The party then returned to the Rainbow Ranch.

The next day the plaintiffs learned that Floyd Thomas was a game warden and that the Fish and Game Commission had confiscated the two elk which they had tagged. Representatives of the Commission arranged for the bringing of the elk down from the mountain. The carcasses were then sold as confiscated meat as is provided by law.

· On February 7, 1967, the plaintiffs filed a petition for a writ of mandate, alleging that the Montana Fish and Game Commission had wrongfully confiscated the elk, that they belonged to plaintiffs and praying that the Commission be ordered to pay the value of the elk, plus attorney's fees to the plaintiffs. After notice and hearing, the district court found in favor of the plaintiffs and issued a writ of mandate commanding the Commission to pay to plaintiffs $65 for the elk each had tagged, and $500 as reasonable attorney's fees. From this determination the Commission has appealed.

The appellant Commission set forth eight issues that the District Court:

(1) Erred in finding that Warden Floyd Thomas "con-

sented" to the taking and tagging of the elk by Visser and Kroon;

(2)   Erred in finding that Duke Hobart wounded the second elk he shot, when in fact, the evidence shows that the second elk was so mortally wounded that it was deprived of its liberty and reduced from the wild state, and no further act on the part of anyone was required to capture it;

(3)   Erred in finding as a fact that Warden Floyd Thomas "appropriated to the use of the defendants and respondents both of the elk" claimed by plaintiffs, when in fact, the illegally taken elk were confiscated pursuant to section 26-110, subd. (4), R.C.M.1947;

(4)   Erred in finding that the illegally taken and confiscated elk were the property of Visser and Kroon;

(5)   Erred in concluding that Visser and Kroon had a right to possess or did possess the elk which were illegally taken and confiscated;

(6)   Erred in concluding that the tagging by Visser and Kroon divested the State of Montana of the right to confiscate the elk, when in fact, the illegally taken and confiscated elk were not tagged in accordance with section 26-202.2, subd. (3), R.C.M.1947, in any event;

(7)   Erred in issuing its peremptory writ of mandate herein commanding the Commission to pay to plaintiffs the sum of $130 plus attorneys' fees in the sum of $500 and court costs;

(8)   Erred in denying the Commission's consolidated motion for new trial, for amendment to findings of fact and conclusions of law, for alteration or amendment of judgment, and for vacation of peremptory writ of mandate, and entry of judgment for the commission.

These issues will be combined and covered in our discussion of what appears to us to be the major objections of appellants to the findings of the trial court which we believe are: Does the assumption of possession and the placing of a valid elk tag on the carcass of an elk killed by another divest the State of

Montana of its ownership and must a validly issued elk, deer or antelope tag be completely filled out and attached to legally taken game before the same may be possessed?

■ Kroon and Visser allege that Game Warden Thomas consented to the tagging of the two elk. Whether he did or did not makes no difference. If game animals are killed and taken contrary to law, any consent given by a game warden is outside the scope of his authority and has no effect whatever in law. R.C.M.1947, § 26-110, subd. (6).

■■ The ownership of wild animals is in the state, and these animals are not subject to private ownership except insofar as the State shall choose to make them so. So long as constitutional limitations are not infringed, the Legislature may impose such terms and conditions as it sees fit on the acquiring of ownership of these wild animals. Rosenfeld v. Jakways, 67 Mont. 558, 216 P. 776. It is the plaintiff's contention that the requirements of the law were met when they tagged the elk.

When a person has the proper license he is authorized to "pursue, hunt, shoot and kill the game animal or animals authorized by the license held and to possess the dead bodies of game animals of the State which are so authorized by the regulation of the commission." R.C.M.1947, § 26-202.1, subd. (4). A person has the same authorization when he has been issued a special license of the type held by the plaintiffs. R.C.M.1947, § 26-202.2.

■ In this case, plaintiffs did not gain ownership of the elk they tagged. The guide Hobart reduced the elk from the wild state, all the plaintiffs did was to place their tags on the animals. The tagging of a game animal that someone else has killed, or so far brought under control that one can walk up to it and cut its throat, is not the method of acquiring ownership contemplated by the statute authorizing a licensed hunter to pursue, hunt, shoot and kill a game animal and then to possess the carcass.

■ R.C.M.1947, § 26-202.2, subd. (3), states that "when any

person should take or kill any * * * elk * * * under such license, such person shall immediately thereafter attach to said animal or animals the proper tag * * *." The word "take" does not mean that one can tag an animal someone else has killed. The word indicates the process used to physically reduce the freedom of the animal—to pursue, hunt, shoot and kill the animal. The person who takes the animal must also be the one who tags it.

In Montana, big game hunting is a sport. The licensed sportsman-hunter must kill his own animal; he cannot have it done for him. When he has the proper license, and has himself taken an animal he may then tag and possess the carcass. When one hunter reduces the animal from its wild state another hunter may not legally possess it. If the person who reduces the animal from the wild state does so in compliance with the law he gains ownership of it. If the animal is not taken and tagged lawfully its ownership remains in the state. It is argued that at the Gardiner elk kill, it was custom to allow the person who puts the first tag on a downed elk to possess it, but we will not dignify this statement with further discussion.

Neither Visser nor Kroon properly filled out their elk tag when they placed it on the respective elk carcasses. The tag of Visser was not properly punched on the month and day of the kill; that of Kroon was not filled in with his name, address and the county of the kill.

Under Montana law, more is required to legally possess a game animal than mere taking. The law provides that "when any person shall take or kill any deer, elk, moose, or antelope under such license, such person shall immediately thereafter attach to said animal or animals the proper tag, coupon or other marker, completely filled out with the name of the license holder, address, date the animal was killed, place the animal was killed, and any other information requested on such tag, coupon or other marker, and such tag, coupon or

other marker shall be kept attached to said carcass so long as any considerable portion of the carcass remains unconsumed. Such tag, coupon or other marker shall be valid only when attached to said license or when such tag, coupon or other marker has been completely filled out and attached to a legally taken game animal, and when the proper tag, coupon or other marker is attached to said game animal so killed, the same may be possessed, used, stored and transported, provided the necessary permit to transport the same accompanies the shipment. Any person who should kill any deer, elk, moose or antelope by authority of any license issued for the killing of such game animal, and shall fail or neglect to fill out and attach his tag, coupon or other marker so provided with the license issued, to the carcass of said deer, elk, moose or antelope or portion thereof, or any person who shall fail to keep said tag, coupon or other marker attached to said deer, elk, moose or antelope or portion thereof while the same is possessed by him shall be guilty of a misdemeanor and upon conviction thereof shall be punished as provided for by law in section 26-324." R.C.M. 1947, § 26-202.2, subd. 3.

This court in a 1957 opinion was called upon to rule on the effect of the failure to fill out a game tag and in a 3 - 2 decision held that where a deer was *lawfully* killed by one who failed to fill out the proper tag attached to his hunting license and attach it to the carcass, the deer was not unlawfully possessed by the plaintiff. Shipman v. Todd, 131 Mont. 365, 310 P.2d 300. Obviously the Shipman case, supra, is not in point for in that case the deer was legally killed. We therefore do not consider Shipman v. Todd, supra, as any authority, but if it were authority in this case, we would overrule the doctrine expressed in that case.

If one possesses a game animal not tagged in accordance with the above statute, it is possessed in violation of the law. Game wardens have the authority and the duty to "confiscate all game, fish, game birds, and fur-bearing animals

or any parts thereof, possessed in violation of the law, or the orders, rules and regulations of the commission * * *." R.C.M. 1947, § 26-110, subd. 4. A game animal that is not tagged in compliance with the law is subject to confiscation by the Fish and Game Commission.

The Montana Fish and Game Commission was acting within its authority when it confiscated the two elk in question. This being true, the plaintiff's prayer must fail. The cause is reversed and remanded to the district court of Gallatin County with orders to vacate the writ of mandate and dismiss the action.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES concur.