THE STATE OF MONTANA, Plaintiff and Respondent, v.
JERRY GALLAGHER, Defendant and Appellant.

No. 11441.

Submitted Sept. 9, 1968.  Decided Sept. 13, 1968.

445 P.2d 45.

Howard C. Foreman (argued), Billings, for appellant.

John L. Adams, Jr. County Atty. (argued), Billings, Forrest H. Anderson, Atty. Gen., Michael Greely, Asst. Atty. Gen. (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Defendant, Jerry Gallagher, was charged with the crime of assault in the first degree, upon the person of Gary Cromer. After a jury trial the defendant was convicted of the crime of assault in the second degree and sentenced to a term of five years in the state prison. From this conviction defendant appeals.

The complaining witness, Gary Cromer of Billings, Montana, and one Robert Adolphson, of Spokane, Washington, frequented a number of bars on the night of August 8th and 9th, 1967. After the bars closed Cromer decided to show Adolphson the "south side," Cromer driving his automobile with Adolphson as a passenger. While proceeding south on South 27th Street Cromer's car and a car driven by Domingo Joe Guiterrez drew up alongside one another. Defendant Gallagher

and his wife Teresa were passengers in the automobile driven by Guiterrez.

Cromer testified that someone in the car in which the defendant was riding asked Cromer and Adolphson if they wanted trouble. The defendant and Guiterrez denied making any such statement and the defendant also testified that the passenger in Cromer's car stuck his arm out the window and asked: "How would you like to be shot with a .22?" Gallagher further testified that he, at this point, grabbed his wife and said "Duck,'" and did not actually see any firearm.

Cromer and Adolphson proceeded on south and parked in a vacant lot on First Avenue South leaving their car there. They met two men in an alley there, Bill Osborn and Larry Hageman.

Osborn stated that Cromer told them that Cromer and Adolphson had been fighting with some people and asked Osborn and Hageman to help out, which they agreed to do. All of them proceeded to Cromer's car and thereafter drove around the area.

In the meantime the defendant had taken his wife home, picked up a pistol and some liquor, returned to the Guiterrez car and the two of them proceeded to drive around. Thereafter the parties in their respective automobiles met. Adolphson was outside the Cromer car. Defendant Gallagher got out of the Guiterrez car and asked if they were looking for trouble. The defendant proceeded to the rear of the Guiterrez car and fired one shot from his .44 Magnum pistol at the Cromer car. The bullet entered the rear window of the Cromer car and passed through the left wrist of Cromer, breaking both bones in his wrist, and also wounding Cromer in the jaw.

The defendant was charged with the crime of assault in the first degree, convicted of assault in the second degree and thereafter judgment was entered. From this judgment and the order overruling his motion for a new trial, defendant appeals, alleging a number of specifications of error.

504

Defendant contends that he was prejudiced by the lower court's allowing a witness for the state, Domingo Guiterrez, the driver of the car in which defendant was riding, to testify after the witness refreshed his memory by referring to a statement the witness made after the shooting incident. Section 93-1901-6, R.C.M.1947, provides:

"A witness is allowed to refresh his memory respecting a fact by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. * * *" The same section also provides that the writing must be produced and the adverse party must be allowed to inspect; such procedure was followed here.

Also the general rule is that "The question of permitting the 'refreshment of memory' of a witness depends upon the circumstances of the particular case, and the answer is within the discretion of the trial court, reviewable only upon abuse." State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, at 560 (1950). Cf. Williams v. United States (C.A. 7 Cir. Ill.), 365 F.2d 21, cert. denied 385 U.S. 981, 87 S.Ct. 530, 17 L.Ed.2d 443 (1966). It was within the discretion of the trial court to allow the witness to refresh his memory. Although the defendant alleges "substantial prejudice," his allegation is a hollow one for he makes no showing of prejudice. Prejudice in a criminal case will not be presumed, but must be shown from the record as a denial of a substantial right. State v. Schleining, 146 Mont. 1, 403 P.2d 625 (1965); State v. Walker, 148 Mont. 216, 419 P.2d 300 (1966).

The defendant shows no prejudice from the record and we can find no abuse of discretion by the trial court in allowing the witness to refresh his memory. The witness acknowledged that he made a statement after the incident and at the trial acknowledged that he recognized the state-

ment was his. The procedures followed were within the ambit of the statute.

Defendant also contends that the trial court erred in its ruling with regard to the redirect examination of the witness Osborn. On redirect examination of Osborn, who was a state's witness, the prosecution asked him if he had had any conversations with the complaining witness Cromer regarding settlement and dismissal of the criminal charge in return for a payment of $2,000. Defense counsel objected to the question as being without the scope of cross-examination and an attempt to impeach the state's own witness; defense counsel later admitted that he opened the subject of the conversations between Cromer and Osborn in his cross-examination of Osborn. Upon defense counsel's objection the trial court recessed for the day and heard, outside the presence of the jury, arguments on defense counsel's objections. It was agreed that the question and answer should be withdrawn. The following morning the court admonished the jury to disregard the question and the answer to it and to give them no effect whatever in their deliberations. Later in instruction No. 23 the court again instructed the jury to consider only the evidence of witnesses on the witness stand and such documentary evidence as was admitted in evidence and to in nowise consider or regard remarks of counsel which were not supported by evidence as given by the witnesses on the witness stand.

The contention of the defendant is that the question concerning dismissal in return for the payment of $2,000 introduced evidence of other crimes which were not charged in the information and so was prejudicial.

There was no evidence introduced of collateral crimes, specifically bribery, which is prohibited by sections 94-1705, 94-1706 and 94-3535, R.C.M.1947. The questions posed by the prosecution were not evidence and, as stated above, the court instructed the jury to consider only the evidence of the witnesses upon the witness stand and such documentary evidence as was admitted and not to consider the remarks

of counsel. In addition the questions were answered in the negative by the witness Osborn. If there was any error at all it was merely technical, and there is a long standing rule in this jurisdiction—based at the time of the instant trial, on section 94-8207, R.C.M.1947, which has since been replaced by section 95-2425—that technical errors or defects will not provide a basis for a reversal in a criminal prosecution. Cf. State v. Schleining, 146 Mont. 1, 15, 403 P.2d 625 (1965); State v. Cates, 97 Mont. 173, 198, 33 P.d 578 (1934).

Defendant also specified as error the giving of instruction No. 32 and the refusal to give defendant's offered instructions Nos. 1 and 2. Defendant's offered instruction No. 2 concerned reasonable doubt, burden of proof and presumption of innocence. Instruction No. 13 covered presumption of innocence; instruction No. 14 covered burden of proof; and instruction No. 15 covered reasonable doubt. Therefore it was not error to refuse to give defendant's offered instruction since the areas it covered had already been adequately covered.

Instruction No. 32 dealt with intent and proof of intent, which proof must ordinarily be by circumstantial evidence, since there can be no eyewitness account of the state of mind with which an act was done or omitted. Intent is an essential element of assault in the first degree (section 94-601, R.C.M.1947) and must be proven. Since the defendant was charged with assault in the first degree it became necessary to instruct the jury on intent. If the court had stricken instruction No. 32 and not given it, there would have been no instruction on intent. Also it was not prejudicial to refuse to give defendant's offered instruction No. 1 since the last paragraph of instruction No. 32 incorporates, verbatim, the relevant portions of defendant's offered instruction No. 1.

Since we can find no merit in any of defendant's specifications of error the judgment is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON, concur.