No. 12881

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————

STATE OF MONTANA,

                    Plaintiff and Appellant,

-vs-

DONALD JACK,

                    Defendant and Respondent.

———————

Appeal from:   District Court of the Fifth Judicial District,
               Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        Chester Lloyd Jones, County Attorney, Virginia
          City, Montana
        Clayton Herron argued, Helena, Montana

    For Respondent:

        Larry D. Whitman argued, West Yellowstone, Montana

    For Amicus Curiae:

        Longan, Holmstrom and Vicki W. Dunaway, Billings,
          Montana
        Vicki W. Dunaway argued, Billings, Montana

———————

                              Submitted:  May 6, 1975

                              Decided:  AUG 19 1975

Filed:  AUG 19 1975

*Thomas J. Kearney*
                              Clerk

Mr. Chief Justice Harrision delivered the Opinion of the Court.

The state of Montana appeals from an order of the district court, Madison County, granting summary judgment to defendant Donald Jack.

Donald Jack is a resident of the state of California charged with violating section 26-909, R.C.M. 1947, Montana's Resident Guide Law, which provides:

"Licensed outfitter or guide required for nonresident hunting-exception for landowner-waiver. (1) It shall be unlawful for any nonresident to hunt game animals on any land within any national forest wilderness area, national game refuge, or state game range within the state of Montana unless accompanied by a licensed outfitter, professional guide or resident guide and the nonresident hunting license must bear the signature and license number of the outfitter or resident guide who accompanies him except as noted below.

"(2) A landowner or agent may guide nonresident or resident hunters on land owned by, or land leased to him without a guide license; or he may authorize nonresident or resident hunters to hunt without a guide on land owned by, or land leased to, such landowner, lessee or agent. The nonresident hunter's hunting license must bear the signature of the resident landowner, lessee or agent on whose fenced property he is hunting as evidence that permission has been obtained.

"(3) The Montana fish and game commission shall have authority to waive guide requirements for holders of B-2, B-5 and B-6 licenses in special deer and antelope areas during the period B-5 and B-6 license holders may hunt.

"Guide requirements may not be waived in areas open to a general hunting season on any game animal other than deer and antelope."

Donald Jack was convicted on November 19, 1973, and fined fifty dollars by a justice of the peace. His conviction was based on a stipulation of facts which can be summarized as:

1. Defendant Donald Jack was a nonresident of the state of Montana at the time of the offense charged.

2. At such time, in Madision County, Montana, defendant was hunting big game within a national forest.

3. That he was, at the time and place, unaccompanied by any resident guide.

4.  Except as may be stated above, defendant was in compliance with all fish and game laws of the state of Montana.

Defendant's sole defense at all levels of these proceedings has taken the form of a constitutional challenge to the statute he admittedly offended.  In support of this challenge he urges that the statute denies him equal protection of the laws in contravention of the Fourteenth Amendment and Article II, Section 4 of the Montana Constitution.  He also contends the statute to be an undue burden on interstate commerce, contrary to the prohibition of Article I, Section 8 of the United States Constitution.

The question of whether a statute encroaches upon the protections offered by the equal protection clause depends directly on the determination of three basic issues: 1) whether the statute is a legitimate and proper exercise of governmental authority; 2) the basis of the classification and an identification of the persons covered thereunder; and 3) the proper standard of review or scope of judicial inquiry regarding the relationship between the classification and the objectives of the law.

There is no question that a state has the power to preserve and regulate its wildlife.  In the nineteenth centry, it was commonly held that this power derived from the common law concept of "sovereign ownership".  Under that doctrine, the ownership of wildlife was held by the state in trust for its people.  McCready v. Virginia, 94 U.S. 391, 24 L.Ed 248; Geer v. Connecticut, 161 U.S. 519, 16 S.Ct.600, 40 L. Ed. 793.  Under more modern theory, the power has been held to lie within the purview of a state's police powers.  Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L. Ed. 75; Van Camp Sea Food Co. v. Dept.of Natural Resources, 30 F.2d 111.

Montana recognizes both the doctrine of sovereign ownership (Rosenfeld v. Jakways, 67 Mont. 558, 216 P. 776), and the police power theory (State ex rel. Nepstad v. Danielson, 149

Mont. 438, 427 P.2d 689). We need not decide which of these doctrines should now prevail in the state of Montana. In the area of wildlife regulation, it is sufficient to state the legislature may impose such terms and conditions as it sees fit, as long as constitutional limitations are not infringed. State ex rel. Visser v. Fish and Game Comm., 150 Mont. 525, 531, 437 P.2d 373.

The next step is to determine the basis for the legislative classification and determine what persons or groups of persons are affected by it. By drawing a distinction between resident and nonresident sportsman, we find the statute directly affects at least four distinct groups of persons. First, are of course the true nonresidents who merely enter the state for the purpose of hunting. But the broad language of the law must also be construed as applying to persons living in the state for a period of time insufficient to satisfy the legal residency requirements (section 26-202.3, R.C.M. 1947); to former residents of the state who still return to hunt; and to persons who own land within the state but maintain their legal residences elsewhere. Defendant is a member of this latter class, as he actually owns land in Madison County.

A hearing was held in the district court to afford the state an opportunity to present evidence regarding the purpose of the statute. On the basis of that evidence, the state contends the legislature had these objectives in mind when the statute was enacted:

1. That the safety of nonresident hunters is promoted by placing them in the company of residents who are more likely to be familiar with the local terrain and weather conditions.

2. That state regulations and terrain are more likely to be obeyed and respected on the assumption that residents are more familiar with the laws and more jealous as to the maintenance of the local environment.

3. That landowners are better protected against the improper use of their land.

4. That the law affords state officials better enforcement control.

Finally, we determine the proper standard of review or scope of judicial inquiry to be applied. Over the years, the courts have developed two main approaches, conditioning their respective application on the nature of the constitutional challenge. Where the challenge extends only to the more general legislative classifications, the judicial inquiry must be limited to determining whether the distinction is justified by a rational basis. Stated another way, we can determine only whether the law has a sufficiently reasonable relation to a proper legislative purpose so as not to be deemed arbitrary. State v. Safeway Stores, Inc., 106 Mont. 182, 76 P.2d 81; Great Falls National Bank v. McCormick, 152 Mont. 319, 448 P.2d 991. In connection with this standard, a classification having some reasonable basis does not deny equal protection merely because it is not made with precise mathematical nicety or results in some inequality. One who attacks the legislation has the burden of proving the classification to be arbitrary. Lindsley v. Natural Carbonic Gas Co., 220 U.S.61, 31 S.Ct. 337, 55 L. Ed. 369; McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L. Ed.2d 393.

But when the challenge extends to classifications which affect "fundamental rights" or certain "suspect criteria" the scope of judicial inquiry is correspondingly increased. The purposes of the law must serve a "compelling governmental interest" and a heavy burden is placed on the state to justify its classification. Huffman v. Montana Supreme Court, 372 F.Supp. 1175.

Defendant alleges and argues that the statute in question infringes upon his constitutional right to travel in an effort to persuade us to apply the stringent "compelling governmental

- 5 -

interest" test.  And, it is true the record tends to indicate
the costs of hiring a resident guide are quite high, and that
many more nonresident hunters enter the state each year than
could be reasonably accommodated by the existing number of
licensed professional guides.  While we recognize a possibility
the resident guide law affects the right to interstate travel,
we do not base our decision on those grounds.  See Shapiro v.
Thompson, 394 U.S. 618, 638 note 21, 89 S.Ct. 1322, 22 L ed.2d
600.

The statute does not appear to be patently unconstitutional
on its face.  But its constitutional defects are revealed when
reviewed in light of its practical application.  The statute was
allegedly designed to promote safety for hunters,  yet it is
an established fact that the requirements of the law have been
waived as to deer and antelope, in those hunting districts com-
prising the eastern one third of this state.  While there may
be a marked difference in the terrain in the two general areas,
we find no reason to assume that one area is less dangerous
than the other.  Further, the dangers inherent to hunting ante-
lope or deer would certainly not decrease as to those who might
hunt elk or moose.  The statute purports to promote adherence
to the game laws and respect for the environment, but no rea-
sonable connection has been established between this goal and
the legislative classification.  Even assuming the existence of
such a connection, its relationship to this particular purpose be-
comes more remote when applied to former Montana residents and
nonresident landowners, as defendant.

The state further contends the law fosters better protec-
tion for private landowners and more effective law enforcement.
Yet the evidence completely fails to establish that more non-
residents than residents are found to be in violation of the law,
or that hunters as a group are less law abiding than fishermen
or other outdoor sportsmen.  Even if the statute did operate  to
promote these goals, certainly the people in the eastern one
third of the state are as deserving of this protection as are
our western citizens.  Certainly all nonresident hunters are

subject to judicial sanction and liability for violations and torts committed within the state.

The relationship between the statutory classification and its legitimate objectives is tenuous and remote, and therefore insufficient to justify the inequities it has engendered. The judgment is affirmed.

_____
Chief Justice

We Concur:

_____
Wesley Castles

_____
John Conway Harrison

_____
Frank I. Haswell

_____
Justices.