No. 13199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ROBERT DAVID FEELEY,

Defendant and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Keefer and Roybal, Billings, Montana
J. Dwaine Roybal argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Charles Erdmann argued, Assistant Attorney General,
Helena, Montana
Harold F. Hanser argued, County Attorney Billings,
Montana

For Amicus Curiae:

Charles M. Brown appeared, Helena, Montana

Submitted: April 22, 1976

Decided: JUL - 9 1976

Filed: JUL - 9 1976

_Thomas J. Kearney_
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by defendant Robert David Feeley from a judgment entered in the district court, Yellowstone County, Hon. Charles Luedke presiding, following a jury verdict finding Feeley guilty of theft.

Feeley was charged with three counts of horse theft pursuant to section 94-6-302(1), R.C.M. 1947. He was found guilty of one count, theft of a horse owned by Glen Larsen, and sentenced to ten years in the Montana State Prison.

The jury heard this testimony concerning the theft: Glen Larsen testified he owned a black mare with the letters "CLR" tatooed inside its lower lip, a tatoo which he said would not be noticed in a casual inspection, and the horse was pastured at the Rob Stephens ranch on Blue Creek. A neighbor of Stephens, Goldie Patterson, testified this same horse wandered onto her pasture and in an attempt to identify the owner, she asked defendant Feeley to examine the horse. Defendant told her he had not seen the horse before. On January 8 or 9, 1975, shortly after defendant's visit to Goldie Patterson's ranch, the horse disappeared.

On February 3, 1975, Maxine Gibson, a part time inspector for the state of Montana, testified she inspected a mare similar in color to the horse in question for defendant at Rockvale, Montana. Not finding a brand, she assumed the horse belonged to defendant and did not require a bill of sale but merely issued an annual permit listing defendant as owner of the horse. On February 5, 1975, defendant brought the horse in question to the Lewistown Public Auction where Jim Arthur, a brand inspector for the state of Montana, inspected the horse but found no brand. At this time, Arthur testified defendant told him he had owned the horse for some time. Defendant then sold the horse in Lewistown using the local inspection permit obtained in Rockvale as evidence of title. Subsequent investigation by the Department

of Livestock disclosed the horse inspected at Rockvale and sold at Lewistown was in fact, Glen Larsen's horse.

Defendant's version regarding the manner he obtained the Larsen horse was: That while at the Standard Bar in Billings, an unidentified person offered to sell him a horse. They traveled that night to Pryor, Montana, where defendant bought the horse in question. He testified he received a bill of sale at that time, but it was subsequently destroyed by fire on March 2, 1975.

Defendant presents two issues to this Court for review:

(1) Was there sufficient evidence to sustain a conviction?

(2) Does section 94-6-302(4), R.C.M. 1947, which makes theft of a "commonly domesticated hoofed animal" a felony, deny defendant equal protection of law?

Defendant contends the evidence was insufficient to sustain a conviction for horse theft in Yellowstone County on two grounds:

First, in general terms, the evidence at best gave mere grounds for suspicion and as such was not sufficient to justify conviction of a crime.

Second, and more specifically, the state failed to prove as an element of the crime, the location of the alleged act in that no evidence was ever offered to prove defendant stole a horse in Yellowstone County.

We cannot agree with defendant's general contention of the lack of substantial evidence to convict. Defendant was charged and convicted of the offense of theft as defined in section 94-6-302(1), R.C.M. 1947:

> "(1) A person commits the offense of theft when he purposely or knowingly obtains or exerts un- authorized control over property of the owner, and:
>
> "(a) has the purpose of depriving the owner of the property; or
>
> "(b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive

- 3 -

the owner of the property; or

"(c) uses, conceals, or abandons the property
knowing such use, concealment or abandonment
probably will deprive the owner of the property."

The testimony at trial clearly demonstrated defendant
was in possession of a black mare and had, in fact, sold that
horse. Glen Larsen testified the horse in question carried his
tatoo and was owned by him. Nowhere in the transcript is there
any indication defendant was acting for the benefit of Larsen
during the time when he possessed and subsequently sold the horse.
Therefore, substantial direct evidence exists to indicate defend-
ant exerted unauthorized control over property of the owner so
as to deprive the owner, the criminal act contemplated in section 94-6-302(1).

As to evidence of criminal intent, " * * * knowingly * * *
purposely * * *", as contemplated by section 94-6-302(1), an
examination of the testimony leads to these conclusions: Defend-
ant in all his transactions with other individuals concerning
this horse, represented himself to be the owner. He testified he
had the bill of sale for the horse in question until March 2,
1975, yet he did not produce that bill of sale at the Rockvale
inspection of February 3, 1975, or the Lewistown sale of February
5, 1975. Defendant told brand inspector Jim Arthur he had owned
the horse for some time, while a month earlier he told Goldie
Patterson he had never seen the horse before. To be sure such
evidence of intent is, by nature, circumstantial, but this Court
has repeatedly held the element of criminal intent may be proven
by circumstantial evidence. State v. Cooper, 158 Mont. 102, 489
P.2d 99; State v. Gallagher, 151 Mont. 501, 445 P.2d 45; State
v. Madden, 128 Mont. 408, 276 P.2d 974. The real question here
is whether substantial circumstantial evidence existed to prove
intent. In State v. Fitzpatrick, 163 Mont. 220, 226, 516 P.2d
605, the Court said:

"To find a person guilty beyond a reasonable doubt,
each fact in a chain of circumstances that will

- 4 -

establish guilt need not be proven beyond a reasonable doubt. <u>What must be proven is that there is not a reasonable doubt arising from consideration of all the evidence in the case.</u>" (Emphasis supplied.)

Here, examination of the circumstantial evidence in its totality clearly demonstrates defendant knew he possessed a horse belonging to someone else and did so with criminal intent to deprive the owner of the horse. There was sufficient substantial evidence to support the jury's verdict of guilty. Where substantial evidence exists to support the jury's verdict, it must stand. State v. Miner, ___Mont.___, 546 P.2d 252, 33 St.Rep. 201; State v. Stoddard, 147 Mont. 402, 412 P.2d 827; State v. White, 146 Mont. 226, 405 P.2d 761.

Defendant contends no evidence was offered to prove Yellowstone County was the location of the crime as charged in Count I of the Information; thus a necessary element of the crime of theft remained unproved. First, we note that location is not an element of the crime of theft as defined in section 94-6-302, R.C.M. 1947. Defendant apparently has confused elements of a crime with the doctrine of venue. Second, examination of the record reveals defendant failed to make any objection as to venue prior to trial. By neglecting to do so, defendant waived any objection he might have had as to the place of trial. Section 95-401, R.C.M. 1947.

Defendant next contends section 94-6-302(4), R.C.M. 1947, is unconstitutional as being a denial of equal protection of law as guaranteed by the Fourteenth Amendment, United States Constitution and Article II, Section 4, 1972 Montana Constitution. We find no merit in this contention.

For purposes of discussion, we set forth section 94-6-302(4):

"(4) A person convicted of the offense of theft of property not exceeding one hundred fifty dollars ($150) in value shall be fined not to exceed five hundred dollars ($500) or be

> imprisoned in the county jail for any term not
> to exceed six (6) months, or both. A person
> convicted of the offense of theft of property
> exceeding one hundred fifty dollars ($150) in
> value <u>or theft of any commonly domesticated
> hoofed animal shall be imprisoned in the state
> prison for any term not to exceed ten (10)
> years.</u>" (Emphasis added.)

Defendant bases his contention on the fact section 94-6-302(4)

contains two classifications of felony theft. One pertains to

"commonly domesticated hoofed animals" for which no minimum

monetary value is required for felony conviction. The second

pertains to other animals and inanimate objects for which a

minimum monetary value in excess of $150 is required for felony

conviction.

With regard to legislative classifications such as this,

this Court recently said in State v. Jack, ____Mont.____, 539 P.2d

726, 729, 32 St.Rep. 858.

> " * * * Where the challenge extends only to the
> more general legislative classifications, the
> judicial inquiry must be limited to determining
> whether the distinction is justified by a rational
> basis. Stated another way, we can determine only
> whether the law has a sufficiently reasonable
> relation to a proper legislative purpose so as
> not to be deemed arbitrary. * * * In connection
> with this standard, a classification having some
> reasonable basis does not deny equal protection
> merely because it is not made with precise math-
> ematical nicety or results in some inequality.
> One who attacks the legislation has the burden
> of proving the classification to be arbitrary."

See also: Montana Land Title Ass'n v. First American Title, ____

Mont.____, 539 P.2d 711, 32 St.Rep. 874. Defendant failed to

meet his burden of proving unreasonable and arbitrary the felony

classification for theft of a "commonly domesticated hoofed

animal". As the Amicus Curiae brief of the Department of Live-

stock points out, this classification is both reasonable and

necessary. Raising livestock is an important industry in Montana.

Theft of livestock is a problem of some magnitude because of the

state's large geographical area and small population. In recog-

nition of these facts the legislature, as a deterrent, enacted

severe penalties for such theft. That the legislature felt such classification was still necessary is evidenced by the fact it was carried over to the Montana Criminal Code of 1973, with only minor changes. In addition, we note other western states recently presented with this very issue have ruled such a felony classification for theft of livestock not to be a denial of equal protection. The rationale for so holding was substantially the same as that advanced here. See: State v. Pacheco, 81 N.M. 97, 463 P.2d 521; State v. Webb, 96 Ida. 325, 528 P.2d 669; People v. Thomas, 43 Cal.App.3d 862, 118 Cal.Rptr. 226.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

_____
Hon. R. D. McPhillips, district judge, sitting in place of Mr. Chief Justice James T. Harrison.