No. 80-458

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN THE MATTER OF THE OUTFITTER'S
LICENSE OF WILLARD H. GODFREY, JR.,
WILLARD H. GODFREY, JR.,

Plaintiffs and Appellants,

vs.

MONTANA STATE FISH & GAME COMMISSION
AND MONTANA STATE DEPARTMENT OF FISH,
WILDLIFE, and PARKS,

Defendants and Respondents.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Landoe, Brown, Planalp, Kommers & Lineberger,
 Bozeman, Montana
Peter Lineberger argued, Bozeman, Montana

For Respondents:

J. Daniel Hoven, Dept. of Justice, Legal Services,
 Division, argued, Helena, Montana

---

Submitted: March 23, 1981

Decided: APR 30 1981

Filed: APR 30 1981

*Thomas J. Kearney*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Willard Godfrey appeals an order of the Gallatin County District Court granting summary judgment in favor of the Department of Fish, Wildlife and Parks. The District Court action was an appeal from the decision of the Department's acting director denying Godfrey's application for renewal of his Montana fishing outfitter's license. Included in Godfrey's appeal was a request for a declaratory judgment regarding the constitutionality of sections 87-4-122(2) and 87-4-126(1), MCA.

In May 1980 Willard Godfrey applied for renewal of his Montana nonresident outfitter's license. The Department, by a letter from its acting director, denied Godfrey's application for renewal on the grounds that he no longer met the residency requirements of section 87-4-126, MCA.

From 1972 through 1978 Godfrey was a resident of Island Park, Idaho, and a duly licensed nonresident fishing guide. At least a portion of his commercial guide business involved guiding fishing trips into the Montana counties of Gallatin, Madison and Beaverhead. In 1978, Godfrey moved his residence from Idaho to Utah, but he continued to operate his outfitting business out of Island Park, Idaho.

In 1979 appellant applied for and was granted a renewal of his nonresident Montana outfitter's license. The Department's denial of his application in 1980 gave rise to his appeal to the District Court. When the District Court affirmed the Department's decision to deny the application, Godfrey appealed to this Court, challenging the constitutionality of sections 87-4-122 and 87-4-126, which

read in pertinent part:

> "Outfitter's Qualifications. Each applicant for and holder of an outfitter's license or any renewal thereof shall, in the opinion of the director, meet the following qualifications:
>
> ". . .
>
> "(2) be a citizen of the United States and a resident of Montana for a full two years, unless the residency requirement is waived by the department." Section 87-4-122, MCA.
>
> "Residence requirements--waiver and reciprocity. (1) Residence requirements for procuring an outfitter's license are waived as to persons who are citizens of a common boundary state and of a common county thereof to the same extent the homestate of the applicant waives such requirements for the residents of Montana, except for fee." Section 87-4-126, MCA.

Although Godfrey maintains a number of constitutional challenges in support of his claim that the residence requirement for licensing as a guide and outfitter is unconstitutional, it is necessary for this Court to only address his allegation that the statutes involved deny him equal protection of the law.

The principal purpose of the Equal Protection Clause, Amend. XIV, U.S. Const., and Art. II, Sec. 4, 1972 Mont. Const., is to ensure that persons who are citizens of this country are not the subject of arbitrary and discriminate state action.

It should be noted at the outset that this Court's review of this case does not reveal that a "fundamental" right is involved, and, therefore, the "strict scrutiny analysis" of equal protection is not triggered. Godfrey's claim that his fundamental right to travel has been abridged by the operation of the residency requirement is unpersuasive. We do not find that any fundamental right has

-3-

been substantially abridged by the Department's denial of his application. Compare, Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

A state may affect a person's right to travel without violating it. If an individual from State A moves to State B and State A refuses him the right to vote in that State's elections, State A has arguably "chilled" that individual's freedom of movement but cannot be found to have abridged his rights under the equal protection clause. Every change of residence involves some element of choice--a balancing of the advantages to be gained by the move as opposed to the privileges sacrificed.

We have determined, also, that the right to practice a profession across state lines is not a fundamental right within the meaning of the equal protection clause. See Huffman v. Mont. Supreme Ct. (D. Mont. 1974), 372 F.Supp. 1175. However, having determined that a fundamental right is not involved in the case before us, our review is not yet complete.

Although not fundamental, the ability of appellant to practice his profession across state lines is, nevertheless, an important right. When he is denied that right solely because of his membership in a class of nonresidents, that classification must be reviewed to determine if it bears some reasonable relationship to legitimate governmental interest. See Great Falls National Bank v. McCormick (1968), 152 Mont. 319, 448 P.2d 991.

Appellant relies heavily upon our decision in State v. Jack (1975), 167 Mont. 456, 539 P.2d 726. This Court finds his reliance on that decision well placed, and we are

-4-

persuaded that the Jack decision is controlling in this case.

The defendant in Jack was convicted of violating Montana's former resident guide law which prohibited nonresidents from hunting on national forest land unless accompanied by a licensed guide. On appeal, we applied the rational-basis test of equal protection analyses, finding that the law was indeed unconstitutional. Appellant asserts that the equal protection analysis applied in Jack also serves to invalidate the statutes which denied him renewal of his nonresident outfitter's license.

This Court in Jack found, inter alia, that (1) the "safety of hunters" rationale was belied by the exceptions contained in the statute itself and was not uniformly or rationally applied to all areas or types of game; (2) the "familiarity with laws and respect for environment" rationale showed no reasonable connection between the goal and the legislative classification; (3) the above connection, if any, was especially "remote" when applied to a former Montana resident and nonresident landowner; and (4) the "landowner protection" and "law enforcement" rationales were supported by no evidence that nonresidents violated laws more than residents, or that hunters are less law abiding than other sportsmen.

We concluded in Jack that the "relationship between the statutory classification and its legitimate objectives is tenuous and remote, and therefore insufficient to justify the inequities it has engendered." 167 Mont. at 463.

The State offers the following justification for the discrimination against the nonresident:

-5-

"The statutes were enacted pursuant to the police power to control the activities of outfitters <u>to insure the safety of persons utilizing their services</u> within the borders of Montana, <u>to protect private property rights, and to insure reasonable law enforcement ability in preserving and protecting the wildlife of Montana</u>." (Emphasis added.)

In our opinion, none of the reasons offered to justify the discrimination are persuasive. To the extent they may be persuasive, similar justifications were advanced and found to be inadequate to uphold the statute in <u>Jack</u>.

We have reviewed the evidence adduced in the trial court and find a glaring lack of any evidence which would support the Department's position. The Department failed to present any testimony which identified nonresidents as the source of any particular evil. The record does not reflect that a nonresident outfitter is any more careless, any less respective of property rights, or any less subject to law enforcement procedures. The nonresident exclusion simply does not address itself to the reasons given for its existence.

As a final note, in <u>Jack</u> this Court found that the exceptions that had been carved out of the statute involved in that case had diluted its purpose and effect to such an extent that, if it had ever bore a reasonable relation to its objective, it certainly did not do so any longer. 167 Mont. at 462. In this case, two exceptions have been made to the residency requirement to make such a requirement ridiculously remote to what the statute seeks to accomplish.

The requirement that an applicant live in Montana and, thus, promote the safety interests of the Department is waived if the applicant lives in a common county of a common

state. It is simply not reasonable to assume that an outfitter in Camas, Jefferson County, Idaho, is less qualified than an outfitter in St. Anthony, Fremont County, Idaho, merely because he lives two counties from the Montana border instead of one. Incidentally, in terms of actual distance, St. Anthony, Idaho, is further from the Montana border than is Camas.

The discriminatory classification becomes even more irrationally related to its published goals when the common county exception is further qualified so that there must be some degree of reciprocal privilege granted to Montana outfitters in the common state. Therefore, assuming Wyoming does not allow nonresident outfitters at all, an applicant from Fremont County, Idaho, is considered qualified as he would further the safety interest of the Department, whereas an outfitter from Park County, Wyoming, would be unqualified.

Having determined that Godfrey has been denied the equal protection of the law by the operation of sections 87-4-122(2) and 87-4-126, MCA, we rule that those statutes are unconstitutional.

We reverse and remand this cause to the District Court for proceedings consistent with this opinion.


_____
Justice

We concur:

_Daniel J. Shea_

_____

_____
Justices

Honorable Douglas G. Harkin,
District Judge, sitting in
place of Mr. Justice Daly

-8-

Mr. Chief Justice Frank I. Haswell, specially concurring.

I concur in the foregoing opinion but additionally I would hold the statute unconstitutional on the additional grounds that it violates the privileges and immunities clause of the United States Constitution. The rationale I would follow is set forth in the case of Gordon vs. Committee on Character and Fitness (1979), 422 N.Y.S.2d 641.

_____
Chief Justice

Mr. Justice John C. Sheehy dissenting:

The majority goes at this constitutional question from entirely the wrong direction. This is not an "equal protection" case (nor a "commerce clause" nor a "privilege and immunities" case, which the majority does not discuss). It is instead, a case that should be decided under the constitutional police power of the state. On that basis, I would affirm the District Court.

The police power of this state is not restricted to the regulation or supervision of what is offensive or disorderly, but embraces regulation designed to promote public welfare and convenience and the peace and good order of society. State v. Loomis (1925), 75 Mont. 88, 242 P. 344. Laws relating to the Fish and Game are special enactments relating to the police power of the state. State v. Rathbone (1940), 110 Mont. 225, 100 P.2d 86.

The federal government, under the commerce clause, has general dominion over navigable waters to the exclusion of the states, but the states have authority to regulate fishing on navigable waters, and the rights of the federal government and the state are not in conflict as long as interstate commerce is not affected. United States v. Pollmann (D. Mont. 1973), 364 F.Supp. 995.

Interstate commerce is not affected by the adoption of the outfitters statutes in this case. The majority has found, correctly, that the right to engage in outfitting in Montana is not a fundamental right. Where a fundamental right is not involved, statutes need not be drawn to fit with precision the legitimate purposes animating them. Baldwin v. Fish and Game Com'n. of Montana (1978), 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354. It is only with respect to basic and essential activities, the interference which

-10-

frustrates the purposes of the Union, that states must treat residents and nonresidents without unnecessary distinction. Baldwin, supra.

The industry of guiding and outfitting is a matter of local concern to this state and is subject to local regulation; the statutes do not attempt to regulate the flow of interstate commerce directly or indirectly; Congress has not spoken on these local concerns, and thus the statutes are valid. Parker v. Brown (1943), 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed.2d 315.

The affidavit of William S. Maloit, a biologist, warden and supervisor of outfitting for Montana, shows that outfitters are responsible for the welfare and safety of their clients; that outfitters must be knowledgeable about the extreme weather conditions, and terrain in Montana; that lack of safety is a common problem in hunting and fishing in Montana; that prevention of trespass of private property owners is a continuing concern. These are legitimate reasons for establishing a distinction between residents and nonresident outfitters. These reasons are reasonably related to the objectives of our statutes, and give a rational basis for the reciprocity provisions. See Baldwin, supra.

The classification in the statutes between residents and nonresidents is not "suspect." Inherent in the statutes is the rationale that residents can effectuate the purposes of the statutes better than nonresident outfitters. The standard of reasonableness is the constitutional measure of the proper exercise of police power. Yellowstone Valley Elec. v. Ostermiller (1980), ___ Mont. ___, 608 P.2d 491, 496, 37 St.Rep. 536, 540. There is no reason to assume that "protectionism" motivates the statutory regulation here.

-11-

The constitutional rights of citizens under the equal protection clause and the privileges and immunities clause are distinguished in Baldwin, supra, but the distinctions are unimportant here, as the reasons for the inapplication of the clauses overlap. There is not a fundamental right here, nor a suspect classification.

I note that Wyoming, Alaska and Colorado limit guide and outfitter's licenses to residents of the respective states; Idaho, California and Utah allow nonresidents to be so licensed, though the fees may differ. If this case had come to us on a statutory requirement that only Montana citizens could be licensed as outfitters, would we have held that requirement unconstitutional? I think (or hope) not. The same reasons to uphold the statute as a valid exercise of state police power would support it. Does it make any difference then that we have added a reciprocity provision, limited to common border states and common border counties? Not at all. Reciprocal statutes or regulations designed to meet a legitimate state goal are invulnerable to constitutional attack on equal protection grounds. Hawkins v. Moss (4th Cir. 1974), 503 F.2d 1171.

Our earlier decision in State v. Jack (1975), 167 Mont. 456, 539 P.2d 726 has no pertinence here. Jack was treated by this Court as a fundamental right case with suspect criteria. 167 Mont at 461, 539 P.2d at 729. A heavy burden was placed on the state to justify its classification in that case. Jack should be given no weight in this decision. The statute in Jack was unevenly applied throughout the state; here the legislation is evenly applied throughout the state.

The concurring opinion finds a violation of the privileges and immunities clause of the United States Constitution,

relying on Gordon v. Committee on Character and Fitness (1979), 422 N.Y.S.2d 641.

Gordon, a lawyer graduate of the University of Virginia lived in New York for two years as house counsel to his employer corporation. He passed the New York bar examination but before the results were announced, he was transferred to North Carolina by his employer. On the basis of his residency change, the committee refused to certify his fitness for admission to the bar of New York. The New York Court of Appeals held he was denied admission solely on the basis of nonresidence, in violation of the privileges and immunities clause.

However, the New York court recognized the Baldwin rule, supra, that where disparate treatment does not implicate "privileges" and "immunities" bearing upon the nation as a single entity, there is no requirement that the state treat residents and nonresidents alike. 422 N.Y.S.2d at 644.

The New York Court posed a two-hurdle test under privileges and immunities (1) the state's governmental interest must justify the discrimination, and (2) the means adopted must be narrowly drawn and the least restrictive. 422 N.Y.S.2d at 645. Montana's statutes on outfitting easily clear those hurdles. In any event, the hurdle test only applies if the legislation affects the nation as a single entity. 422 N.Y.S. 2d at 645.

There is no need to discuss plaintiff's claim that the statutes impinge on his right to travel. There is no merit to the claim.

In striking down this legislation, the majority has opened the business of outfitting in Montana to anybody from anywhere. That result is more irrational than the fancied horrors the majority found in the stricken statutes.

-13-

I dissent.  We should affirm the summary judgment in favor of the Department.

John C. Shehy
Justice