MR. JUSTICE HARRISON
delivered the opinion of the Court.
Willard Godfrey appeals an order of the Gallatin County District Court granting summary judgment in favor of the Department of Fish, Wildlife and Parks. The District Court action was an appeal from the decision of the Department’s acting director denying Godfrey’s application for renewal of his Montana fishing outfitter’s license. Included in Godfrey’s appeal was a request for a declaratory judgment regarding the constitutionality of sections 87-4-122(2) and 87-4-126(1), MCA.
In May 1980 Willard Godfrey applied for renewal of his Montana nonresident outfitter’s license. The Department, by a letter from its acting director, denied Godfrey’s application for renewal on the grounds that he no longer met the residency requirements of section 87-4-126, MCA.
From 1972 through 1978 Godfrey was a resident of Island Park, Idaho, and a duly licensed nonresident fishing guide. At least a *306 portion of his commercial guide business involved guiding fishing trips into the Montana counties of Gallatin, Madison and Beaver-head. In 1978, Godfrey moved his residence from Idaho to Utah, but he continued to operate his outfitting business out of Island Park, Idaho.
In 1979 appellant applied for and was granted a renewal of his nonresident Montana outfitter’s license. The Department’s denial of his application of 1980 gave rise to his appeal to the District Court. When the District Court affirmed the Department’s decision to deny the application, Godfrey appealed to this Court, challenging the constitutionality of sections 87-4-122 and 87-4-126, which read in pertinent part:
“Outfitter’s Qualifications. Each applicant for and holder of an outfitter’s license or any renewal thereof shall, in the opinion of the director, meet the following qualifications:
“(2) be a citizen of the United States and a resident of Montana for a full two years, unless the residency requirements is waived by the department.” Section 87-4-122, MCA.
“Residence requirements — waiver and reciprocity. (1) Residence requirements for procuring an outfitter’s license are waived as to persons who are citizens of a common boundary state and of a common county thereof to the same extent the homestate of the applicant waives such requirements for the residents of Montana, except for fee.” Section 87-4-126, MCA.
Although Godfrey maintains a number of constitutional challenges in support of his claim that the residence requirement for licensing as a guide and outfitter is unconstitutional, it is necessary for this Court to only address his allegation that the statutes involved deny him equal protection of the law.
The principal purpose of the Equal Protection Clause, Amend. XIV, U.S.Const., and Art. II, Sec. 4, 1972 Mont.Const., is to ensure that persons who are citizens of this country are not subject of arbitrary and discriminate state action.
*307 It should be noted at the outset that this Court’s review of this case does not reveal that a “fundamental” right is involved, and, therefore, the “strict scrutiny analysis” of equal protection is not triggered. Godfrey’s claim that his fundamental right to travel has been abridged by the operation of the residency requirements is unpersuasive. We do not find that any fundamental right has been substantially abridged by the Department’s denial of his application. Compare, Shapiro v. Thompson (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.
A state may affect a person’s right to travel without violating it. If an individual from State A moves to State B and State A refused him the right to vote in that State’s elections, State A has arguably “chilled” that individual’s freedom of movement but cannot be found to have abridged his rights under' the equal protection clause. Every change of residence involves some element of choice — a balancing of the advantages to be gained by the move as opposed to the privileges sacrificed.
We have determined, also, that the right to practice a profession across state lines is not a fundamental right within the meaning of the equal protection clause. See Huffman v. Mont. Supreme Court (D.Mont. 1974), 372 F.Supp. 1175. However, having determined that a fundamental right is not involved in the case before us, our review is not yet complete.
Although not fundamental, the ability of appellant to practice his profession across state lines is, nevertheless, an important right. When he is denied that right solely because of his membership in a class of nonresidents, that classification must be reviewed to determine if it bears some reasonable relationship to legitimate governmental interest. See Great Falls National Bank v. McCormick (1968), 152 Mont. 319, 448 P.2d 991.
Appellant relies heavily upon our decision in State v. Jack (1975), 167 Mont. 456, 539 P.2d 726. This Court finds his reliance on that decision well placed, and we are persuaded that the Jack decision is controlling in this case.
The defendant in Jack was convicted of violating Montana’s *308 former resident guide law which prohibited nonresidents from hunting on national forest land unless accompanied by a licensed guide. On appeal, we applied the rational-basis test of equal protection analyses, finding that the law was indeed unconstitutional. Appellant asserts that the equal protection analysis applied in Jack also serves to invalidate the statutes which denied him renewal of his nonresident outfitter’s license.
This Court in Jack found, inter alia, that (1) the “safety of hunters” rationale was belied by the exceptions contained in the statute itself and was not uniformly or rationally applied to all areas or types of game; (2) the “familiarity with laws and respect for environment” rationale showed no reasonable connection between the goal and the legislative classification; (3) the above connection, if any, was especially “remote” when applied to a former Montana resident and nonresident landowner; and (4) .the “landowner protection” and “law enforcement” rationales were supported by no evidence that nonresidents violated laws more than residents, or that hunters are less law abiding than other sportsmen.
We concluded in Jack that’ the “relationship between the statutory classification and its legitimate objectives is tenuous and remote, and therefore, insufficient to justify the inequities it has engendered.” 167 Mont. at 463, 539 P.2d 726.
The State offers the following justification for the discrimination against the nonresident:
“The statutes were enacted pursuant to the police power to control the activities of outfitters to insure the safety of persons utilizing their services within the borders of Montana, to protect private property rights, and to insure reasonable law enforcement ability in preserving and protecting the wildlife of Montana.” (Emphasis added.)
In our opinion, none of the reasons offered to justify the discrimination are persuasive. To the extent they may be persuasive, similar justifications were advanced and found to be inadequate to uphold the statute in Jack.
*309 We have reviewed the evidence adduced in the trial court and find a glaring lack of any evidence which would support the Department’s position. The Department failed to present any testimony which identified nonresidents as the source of any particular evil. The record does not reflect that a nonresident outfitter is any more careless, any less respective of property rights, or any less subject to law enforcement procedures. The nonresident exclusion simply does not address itself to the reasons given for its existence.
As a final note, in Jack this Court found that the exceptions that had been carved out of the statute involved in that case had diluted its purpose and effect to such an extent that, if it had ever bore a reasonable relation to its objective, it certainly did not do so any longer. 167 Mont. at 462, 539 P.2d 726. In this case, two exceptions have been made to the residency requirement to make such a requirement ridiculously remote to what the statute seeks to accomplish.
The requirement that an applicant live in Montana and, thus, promote the safety interests of the Department is waived if the applicant lives in a common county of a common state. It is simply not reasonable to assume that an outfitter in Camas, Jefferson County, Idaho, is less qualified than an outfitter in St. Anthony, Fremont County, Idaho, merely because he lives two counties from the Montana border instead of one. Incidentally, in terms of actual distance, St. Anthony, Idaho, is further from the Montana border than is Camas.
The discriminatory classification becomes even more irrationally related to its published goals when the common county exception is further qualified so that there must be some degree of reciprocal privilege granted to Montana outfitters in the common state. Therefore, assuming Wyoming does not allow nonresident outfitters at all, an applicant from Fremont County, Idaho, is considered qualified as he would further the safety interest of the Department, whereas an outfitter from Park County, Wyoming, would be unqualified.
Having determined that Godfrey has been denied the equal pro *310 tection of the law by the operation of sections 87-4-122(2) and 87-4-126, MCA, we rule that those statutes are unconstitutional.
We reverse and remand this cause to the District Court for proceedings consistent with this opinion.
MR. JUSTICES SHEA, WEBER and MORRISON and DOUGLAS G. HARKIN, District Judge sitting in place of Mr. Justice Daly, concur.