MR. JUSTICE SHEEHY
dissenting:
The majority goes at this constitutional question from entirely the wrong direction. This is not an “equal protection” case (nor a “commerce clause” nor a “privilege and immunities” case, which the majority does not discuss). It is instead, a case that should be decided under the constitutional police power of the state. On that basis, I would affirm the District Court.
The police power of this state is not restricted to the regulation or supervision of what is offensive or disorderly, but embraces regulation designed to promote public welfare and convenience and the peace and good order of society. State v. Loomis (1925), 75 Mont. 88, 242 P. 344. Laws relating to the Fish and Game are special enactments relating to the police power of the state. State v. Rathbone (1940), 110 Mont. 225, 100 P.2d 86.
The federal government, under the commerce clause has general dominion over navigable waters to the exclusion of the states, but the states have authority to regulate fishing on navigable waters, and the rights of the federal government and the state are not in conflict as long as interstate commerce is not affected. United States v. Pollmann (D.Mont. 1973), 364 F.Supp. 995.
*311 Interstate commerce is not affected by the adoption of the outfitters statutes in this case. The majority has found, correctly, that the right to engage in outfitting in Montana is not a fundamental right. Where a fundamental right is not involved, statutes need not be drawn to fit with precision the legitimate purposes animating them. Baldwin v. Fish and Game Com’n. of Montana (1978), 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354. It is only with respect to basic and essential activities, the interference which frustrates the purposes of the Union, that states must treat residents and nonresidents without unnecessary distinction. Baldwin, supra.
The industry of guiding and outfitting is a matter of local concern to this state and is subject to local regulation; the statutes do not attempt to regulate the flow of interstate commerce directly or indirectly; Congress has not spoken on these local concerns, and thus the statutes are valid. Parker v. Brown (1943), 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed.2d 315.
The affidavit of William S. Maloit, a biologist, warden and supervisor of outfitting for Montana, shows that outfitters are responsible for the welfare and safety of their clients; that outfitters must be knowledgeable about the extreme weather conditions, and terrain in Montana; that lack of safety is a common problem in hunting and fishing in Montana; that prevention of trespass of private property owners is a continuing concern. These are legitimate reasons for establishing a distinction between residents and nonresident outfitters. These reasons are reasonably related to the objectives of our statutes, and give a rational basis for the reciprocity provisions. See Baldwin, supra.
The classification in the statutes between residents and nonresidents is not “suspect.” Inherent in the statutes is the rationale that residents can effectuate the purposes of the statutes better than nonresident outfitters. The standard of reasonableness is the constitutional measure of the proper exercise of police power. Yellowstone Valley Elec. v. Ostermiller (1980), 187 Mont. 8, 608 P.2d 491, 496, 37 St.Rep. 536, 540. There is no reason to assume that “protectionism” motivates the statutory regulation here.
*312 The constitutional rights of citizens under the equal protection clause and the privileges and immunities clause are distinguished in Baldwin, supra, but the distinctions are unimportant here, as the reasons for the inapplication of the clauses overlap. There is not a fundamental right here, nor a suspect classification.
I note that Wyoming, Alaska and Colorado do limit guide and outfitter’s licenses to residents of the respective states; Idaho, California and Utah allow nonresidents to be so licensed, though the fees may differ. If this case had come to us on a staturory requirement that only Montana citizens could be licensed as outfitters, would we have held that requirement unconstitutional? I think (or hope) not. The same reasons to uphold the statute as a valid exercise of state police power would support it. Does it make any difference then that we have added a reciprocity provision, limited to common border states and common border counties? Not at all. Reciprocal statutes or regulations designed to meet a legitimate state goal are invulnerable to constitutional attack on equal protection grounds. Hawkins v. Moss (4th Cir. 1974), 503 F.2d 1171.
Our earlier decision in State v. Jack (1975), 167 Mont. 456, 539 P.2d 726 has no pertinence here. Jack was treated by this Court as a fundamental right case with suspect criteria. 167 Mont. at 461, 539 P.2d at 729. A heavy burden was placed on the state to justify its classification in that case. Jack should be given no weight in this decision. The statute in Jack was unevenly applied throughout the state; here the legislation is evenly applied throughout the state.
The concurring opinion finds a violation of the privileges and immunities clause of the United States Constitution, relying on Gordon v. Committee on Character and Fitness (1979), 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309.
Gordon, a lawyer graduate of the University of Virginia lived in New York for two years as house counsel to his employer corporation. He passed the New York bar examination but before the results were announced, he was transferred to North Carolina by his employer. On the basis of his residency change, the committee refused to certify his fitness for admission to the bar of New York. *313 The New York Court of Appeals held he was denied admission solely on the basis of nonresidence, in violation of the privileges and immunities clause.
However, the New York court recognized the Baldwin rule, supra, that where disparate treatment does not implicate “privileges” and “immunities” bearing upon the nation as a single entity, there is no requirement that the state treat residents and nonresidents alike. 422 N.Y.S.2d at 644, 397 N.E.2d at 1312.
The New York Court posed a two-hurdle test under privileges and immunities (1) the state’s governmental interest must justify the discrimination, and (2) the means adopted must be narrowly drawn and the least restrictive. 422 N.Y.S.2d at 645, 397 N.E.2d at 1313. Montana’s statutes on outfitting easily clear those hurdles. In any event, the hurdle test only applies if the legislation affects the nation as a single entity. 422 N.Y.S.2d at 645, 397 N.E.2d at 1313.
There is no need to discuss plaintiff’s claim that the statutes impinge on his rights to travel. There is no merit to the claim.
In striking down this legislation, the majority has opened the business of outfitting in Montana to anybody from anywhere. That result is more irrational than the fancied horrors the majority found in the stricken statutes.
I dissent. We should affirm the summary judgment in favor of the Department.