JUSTICE NELSON
delivered the Opinion of the Court.
This is an appeal from a decision of the Thirteenth Judicial District Court, Yellowstone County, declaring the widow (Petitioner/Eleanor) cannot collect against the will of the decedent (Everett). We affirm.
We restate the issue on appeal. Did the District Court err in determining the prenuptial agreement between Eleanor and Everett was valid, thus, precluding Eleanor from collecting her elective share of Everett’s estate?
Facts
Everett and Eleanor were married June 27, 1981. Both Everett and Eleanor had been married previously. Eleanor had one child by her previous marriage and Everett had three children by his. The parties entered into a prenuptial agreement on June 26, 1981. This agreement was prepared by Everett’s attorney (Mr. Gunderson). Eleanor was not represented by counsel in this matter.
The second recital to the prenuptial agreement stated:
WHEREAS, each of the parties owns individual real and personal property, the nature and extent of the holdings of each party having been fully disclosed to the other; ...
Following, the first three substantive paragraphs of the prenuptial agreement stated:
1. After the solemnization of the marriage between the parties, each of them shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property, free from any claim that may be made by the other by reason of their marriage and with the same effect, as if no marriage had been consummated between them.
2. Notwithstanding the provisions of the next preceding and next succeeding paragraphs, any real or personal property ac *274 quired as joint tenants during their marriage shall, at the death of one of the parties, vest in the survivor of them.
3. Each of the parties waives and releases all rights as surviving spouse in the property or estate of the other and waives the right to elect to take against the other’s will, whether heretofore or hereafter made.
Mr. Gunderson testified that he did not discuss the prenuptial agreement with Eleanor prior to its preparation. Mr. Gunderson inquired in the presence of Everett and Eleanor whether they understood the agreement and were aware of the assets of the other. Eleanor recalls that Mr. Gunderson asked Everett and her whether they divulged their assets to each other and that Everett said they had. Eleanor claims they had not divulged their assets and, although she knew it at the time, she remained silent and did not speak up.
Eleanor admits reading the agreement. She testified it was her understanding, at the time, the gist of the agreement was that she would not have a claim to anything which Everett and his first wife had accumulated. Eleanor claims nobody explained to her the nature of what was meant by waiving her elective share of the estate. Mr. Gunderson testified Eleanor said nothing at the time to indicate she was dissatisfied with the agreement, she did not understand what she was signing, she was pressured or coerced into signing it, or it only applied to property accumulated in Everett’s prior marriage.
At the time of his marriage to Eleanor, Everett owned his home, two cars, personal belongings and a Piper, Jaftray & Hopwood retirement account valued at $143,090. Eleanor had approximately $7,000 of assets. Eleanor said she supposed Everett owned the home he had lived in for nearly forty years, but he had never said so. Additionally, Eleanor testified that she knew Everett had worked at Piper, Jaftray & Hopwood since shortly after World War II but claimed she did not know he had any retirement benefits or savings through his employer. During their marriage, Eleanor said she quit her job as a realtor, at Everett’s request, and relied on his support.
Eleanor testified that, in 1985-86, in response to a comment made by Everett, she consulted an attorney as to the prenuptial agreement and her financial situation. She said her attorney told her she had signed all of her rights away and should ask Everett to provide for her in an irrevocable will. At Eleanor’s request, Everett drafted a will devising to Eleanor $10,000 in cash, furniture and household goods, a life estate in the family home and earnings on a bond portfolio that *275 he would maintain in a minimum amount of $100,000 for Eleanor’s life. The will provided “[a]s to the bequest to my wife, ELEANOR E. THIES, contained herein, this Will shall be irrevocable so long as we are married and living together.”
Eleanor and Everett had marital conflict which resulted in the filing by Eleanor of a petition for dissolution of marriage on June 6, 1991. The couple separated and Eleanor moved to Colorado. On July 9, 1991, Everett prepared a new will disinheriting Eleanor and naming his children as the sole heirs to his estate. Everett died on March 20, 1992. The pending dissolution action was dismissed by reason of Everett’s death.
At his death, Everett’s Piper Jafiray account was valued at $333,692. Eleanor testified her net worth was under $10,000. Eleanor filed a petition for payment of her elective share on June 19, 1992. A non-jury trial was held on December 21, 1993. The District Court ruled the prenuptial agreement precluded Eleanor from claiming her elective share. Judgment was entered in favor of respondents, Barbara Lowe, Patty Coram and John Thies, on March 30, 1994. From this judgment, Eleanor appeals.
Discussion
Eleanor argues the prenuptial agreement, signed in 1981, contained an invalid waiver under the governing statute — § 72-2-102, MCA(1979). Section 72-2-102, MCA(1979), a codification of UPC § 2-204, provides:
Waiver of rights by spouse. The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property, and family allowance or any of them may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of “all rights” (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead allowance, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement. [Emphasis added.]
*276 Eleanor contends, prior to signing the prenuptial agreement, Everett did not disclose his assets to her. Therefore, Eleanor claims the agreement is not valid and she did not waive her elective share.
Eleanor refers to our decision in In Matter of Estate of Flasted (1987), 228 Mont. 85, 741 P.2d 750, where we determined a widow waived her right to an elective share of her husband’s estate in an agreement with her brother-in-law. In that case, the widow signed an agreement acknowledging she had rights to the property of the estate as the deceased’s widow; she was represented by an experienced attorney who drafted the agreement; and, the brother-in-law was not represented by counsel and was unaware of the widow’s statutory rights. Eleanor argues the agreement she signed should be held invalid for the same reasons the widow’s agreement, in Flasted, was found valid — Eleanor did not know she had rights to an elective share of the property; she was not represented by counsel; and, it was Everett’s attorney who drafted the agreement.
In Flasted, however, the widow’s argument was based on the ambiguity of the agreement regarding what rights she was waiving. The agreement’s ambiguity was interpreted against the widow because it was her counsel who drafted the agreement. In the divorce proceedings Eleanor initiated prior to Everett’s death, Eleanor’s counsel stated the prenuptial agreement was “straightforward and simple.” Therefore, it’s ambiguity is not at issue and the Flasted decision does not apply.
Eleanor then refers to Breidenbach v. Wedum (1988), 233 Mont. 478, 760 P.2d 1237, which involves the validity of a family settlement agreement between heirs as a renunciation of the vested rights of a single heir. We held the settlement agreement to be invalid because it did not describe the property or interest, nor did it declare the extent of the renunciation. Eleanor claims her prenuptial agreement lacked the same element — explicit disclosure. Eleanor argues, under Breidenbach, the prenuptial agreement fails.
The heir’s rights which were contested in Breidenbach vested at the decedent’s death because the heir was the named beneficiary of a life insurance policy and was a joint tenant with the decedent in certain property. The governing statute, § 72-2-101, MCA (1979), specifically required that a writing, in a renunciation of succession, shall “describe the property or part thereof or interest therein renounced.” The statute governing the waiver of rights by a spouse, § 72-2-102, MCA (1979), requires only “fair disclosure.” Therefore, Breidenbach does not apply as well.
*277 Eleanor asserts we should consider other states’ interpretations of fair disclosure under UPC § 2-204. Particularly, the New Jersey Superior Court, in DeLorean v. DeLorean (N.J. 1986), 511 A.2d 1257, prescribed that, henceforth, prenuptial agreements must contain a written document setting forth the assets and liabilities of both parties in order to be enforceable. Eleanor also points to decisions of the Maine and Florida Supreme Courts holding that specific disclosures, along with explicit reference to the statutory rights being waived, are necessary for fair disclosure. Estate of Robert Berzinis (Maine 1986), 505 A.2d 86; Estate of Galluzzo (Maine 1992), 615 A.2d 236, 238; and Oliveira v. Sturm (Fla. App. 3 Dist. 1992), 610 So.2d 108.
While detailing assets and values of each party in the prenuptial agreement or by way of attachment or addendum might make some sense from a drafting standpoint, as doing so would likely render the agreement less subject to challenge, the statute at issue here does not impose such a requirement. Rather, § 72-2-102, MCA (1979), requires only that there be “fair disclosure” before the agreement is entered into. It is not the prerogative of this Court or of the trial court to insert into the statute that which has been omitted or omit that which has been inserted. Section 1-2-101, MCA. While recognizing that other states have resolved this issue differently, we, nevertheless, decline to read into the statute a requirement of explicit or detailed disclosure either as part of the agreement itself or as part of the discussions preceding entry into the agreement since that sort of requirement was not included by the legislature.
Rather, the respondents, Everett’s heirs, contend the District Court properly followed the Colorado Supreme Court’s reasoning in a nearly identical situation to the case at hand. In re Estate of Lopata (Colo. 1982), 641 P.2d 952. We agree that Lopata represents the better interpretation of the language in § 72-2-102, MCA (1979). Three days before their wedding, a 57-year old woman and a man 10 years her senior, both with children from prior marriages, executed a prenuptial agreement which included a recital of full disclosure and wherein each renounced any interest in the estate of the other. Similar to the facts surrounding Eleanor and Everett’s agreement, the husband’s attorney drafted the agreement and the wife was not advised by him nor represented by independent counsel. Other than the disclosure recital, there was no evidence that either party disclosed all of his or her assets to the other. The husband’s estate exceeded $1 million— approximately 40 times the net value of his wife’s estate. Nevertheless, the Colorado Supreme Court upheld the district court’s finding *278 that the evidence failed by any standard to establish fraud, concealment, material misrepresentation, or undue influence by the husband at the time the prenuptial contract was entered into. Lopata, 641 P.2d at 956. Under the facts of that case, the court concluded, though the disclosure of the husband’s assets to his wife was general, it was entirely fair.
The District Court acknowledged that a number of other states take a fairly stringent view concerning the extent of disclosure required to constitute fair disclosure. The court stated the best procedure would obviously be to insert in the prenuptial agreement the disclosure of assets and values between the parties. However, the court believed the Colorado Supreme Court enunciated the better view of fair disclosure when it stated the following:
Fair disclosure contemplates that each spouse should be given information, of a general and approximate nature, concerning the net worth of the other. Each party has a duty to consider and evaluate the information received before signing an agreement since they are not assumed to have lost their judgmental faculties because of their pending marriage.
Lopata, 641 P.2d at 955.
The District Court noted, since Everett was deceased, Eleanor was the only witness available who could testify to the actual discussions between her and Everett concerning their assets. The court, as the trier of fact, found Eleanor’s testimony involving Everett’s disclosure and her general knowledge of Everett’s worth not particularly credible. “The credibility of witnesses and the weight to be assigned to their testimony are to be determined by the trier of fact, and disputed question of fact and credibility will not be disturbed on appeal [citation omitted].” State v. Moreno (1990), 241 Mont. 359, 361, 787 P.2d 334, 336.
In considering what Eleanor claimed she knew, what was placed in evidence by her own witness, and the recitation in the prenuptial agreement that the parties had made a full disclosure of their assets, the District Court found “Eleanor at least in general terms knew that Everett had a residence, two cars, the personal belongings in the residence and some retirement or savings account through his employer Piper, Jaffray & Hopwood.” The District Court concluded “there was at least a general disclosure of the assets and income capacity of Everett prior to marriage which would constitute a ‘fair disclosure’ under Section 72-2-10[2], MCA.” We also note Eleanor *279 acknowledged in the written agreement that “the nature and extent of the holdings of each party [were] fully disclosed to the other.”
Whether there was fair disclosure of Everett’s assets prior to the parties’ execution of the prenuptial agreement was a factual determination to be made by the District Court. We review a district court’s finding of fact to determine if the findings are clearly erroneous. Columbia Grain International v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678. To make a clearly erroneous determination, we apply the three-part test adopted in Interstate Production Credit Ass’n v. DeSaye (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287.
First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. [Citations omitted] Third, if substantial evidence exists and the effect of the evidence as not been misapprehended, the Court may still find that “ ‘[A] finding is “clearly erroneous” when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.’ ” U.S. v. U.S. Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.
We have reviewed the record and, in light of the District Court’s determination that Eleanor lacked credibility, we conclude substantial evidence exists to support the District Court’s finding of general disclosure on the part of Everett to Eleanor. We further conclude this evidence has not been misapprehended nor has a mistake been committed.
Although, here, disclosure was not detailed, we agree with the District Court’s conclusion that the requirements of § 72-2-102, MCA (1979) — in particular, fair disclosure — were complied with under the facts of this case. In making this determination, the District Court properly relied on Lopata, 641 P.2d at 955-56, which was directly on point both factually and legally.
As the Dissent points out, and as we also point out above, this case could have easily been avoided if the parties had included a list of their assets and values in the agreement. The fact is, however, they did not and there is nothing in § 72-2-102, MCA, that requires a list — a point that the Dissent fails to acknowledge. With no support in the record, save Eleanor’s self-serving testimony which the trial judge found not credible, the Dissent presumes that Everett did not fairly disclose his assets and values to her and, apparently, in some *280 unexplained way took advantage of her lack of business acumen. There is simply no basis for such a presumption. Eleanor signed an agreement in which she, in writing, acknowledged that there had been full disclosure. While she now claims she knew at the time that there was not full disclosure, she nevertheless also admits that she did not speak up when Everett stated to Mr. Gunderson that there had been full disclosure. She voluntarily signed the agreement that was presented to her. There is nothing in the record that indicates Eleanor was forced to sign the agreement, that she requested more time to consider and study the agreement or that she was precluded from retaining her own counsel to review the agreement and advise her of the consequences of signing it. She admits that she learned of the nature of what she had given up under the agreement while Everett was still alive, yet she took no legal action to set the agreement aside or challenge it, until after Everett’s death. There is nothing in the record that indicates that, assuming arguendo, there was not fair disclosure, that Eleanor tried to get more information about Everett’s estate or that she even inquired further of him in that regard before signing the agreement.
In short, while criticizing the result of our opinion as creating a duty between potential spouses to question each other about their assets (the very duty that § 72-2-102, MCA, seems to contemplate), the Dissent’s position ignores the statute and, rather, attempts to justify Eleanor for failing to demand fair disclosure when, according to her, she knew it had not been made; for knowingly concurring with the misrepresentation of fair disclosure in the written agreement; and, finally, for attempting to take advantage of her own misconduct at a time when Everett is no longer alive to defend himself or his estate. That approach is not supportable on the facts here, as a matter of law or in basic fairness.
Finally, Eleanor argues the applicability of the Uniform Prenuptial Agreement Act adopted by Montana in 1987. We note the act was not in force at the time this prenuptial agreement was entered into, and Eleanor has not cited us to any authority that would require us to apply the act. Without deciding whether or not the act does apply, based upon.the facts of this case and the District Court’s findings, its application would not change the result here in any event.
We hold the District Court did not err in determining the prenuptial agreement between Eleanor and Everett was valid, thus, precluding Eleanor from collecting her elective share of Everett’s estate. We affirm.
*281 JUSTICES GRAY, HUNT and TRIEWEILER concur.