No. 00-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 118

MARY WILKES,

Plaintiff and Appellant,

v.

THE ESTATE OF LAWRENCE R. WILKES,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Scott B. Spencer, Attorney at Law, Libby, Montana

For Respondent:

L. Charles Evans, Attorney at Law, Libby, Montana

David W. Harman, Attorney at Law, Libby, Montana

Submitted on Briefs: March 1, 2001
Decided: July 13, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The plaintiff, Mary Wilkes, brought this action in the District Court for the Nineteenth Judicial District in Lincoln County to challenge the validity of a premarital agreement that she entered into with her now deceased husband, Lawrence Wilkes. After a one day trial, the District Court held that the agreement was valid and binding. Mary Wilkes appeals that conclusion and the findings on which it is based. We affirm the judgment of the District Court.

¶2 We restate the issues as follows:

¶3 (1) Did the District Court err when it held that the premarital agreement was a valid contract?

¶4 (2) Did the District Court err when it held that the agreement was not unconscionable in violation of §72-2-224, MCA?

## FACTUAL BACKGROUND

¶5 Mary and Lawrence Wilkes were married on September 5, 1996. Mary was 21 years old at the time, and developmentally disabled. Lawrence was 62 years old and has three children from his previous marriage. His first wife died shortly before he met Mary. At the time of his marriage to Mary, Lawrence was in poor health.

¶6 Mary and Lawrence lived together in Lawrence's home for approximately four months prior to their marriage. Lawrence owned five acres of property on which his house, logging equipment, a sawmill, a couple trailers and the homes of two of Lawrence's sons and their families were all located. Lawrence was retired and received Social Security retirement benefits as his only income. Mary was unemployed and received Social Security disability benefits.

¶7 Two days before their marriage, Lawrence brought Mary to see his attorney, L. Charles Evans. Evans needed Lawrence's signature on a living will and a power of attorney. Several weeks earlier, Lawrence had also asked Evans to prepare a premarital agreement

which was discussed during this meeting. Evans gave a copy to both Mary and Lawrence and discussed the pertinent parts of the agreement. The agreement provides that:

> Larry and Mary plan to be married on September 5, 1996 in Libby, Montana. Each has acquired assets during their lives with Larry acquiring substantial real and personal property and Mary acquiring only personal property. Each has acquired all of their separate property independently and without the assistance of the other. Each wishes to keep all of their separate property, whether now owned or hereafter acquired, free from any claim of the other by virtue of the forthcoming marriage. Larry and Mary each state that they have made a full and fair disclosure to the other of the assets owned by each. Each desires to set forth their mutual agreement and understanding in writing.

> . . .

> <u>Property of Larry</u>. The separate property owned by Larry consists of two adjoining parcels of real property, where he now resides, various items of logging equipment, personal items to the family, 1982 Chevrolet Pickup, 1981 Oldsmobile car and a Fiberform boat.

> <u>Property of Mary</u>. Mary is the owner of various personal effects, a bed, and two dressers.

¶8 Mary and Lawrence signed the agreement. Almost two years later, on June 2, 1998, Lawrence's death was caused by an aneurism. On March 31, 1999, Mary brought this action to challenge the enforcement of the premarital agreement.

## DISCUSSION

## ISSUE ONE

¶9 Did the District Court err when it held that the premarital agreement was a valid contract?

¶10 We review a district court's findings of facts regarding the validity of a premarital agreement to determine if the findings are clearly erroneous. *Thies v. Lowe* (1995), 273 Mont. 272, 279, 203 P.2d 186, 190. The findings are clearly erroneous if (1) they are not supported by substantial evidence, (2) the trial court has misapprehended the effect of the evidence or (3) a review of the record leaves the court with the definite and firm

conviction that a mistake has been committed. *Interstate Production Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322-323, 820 P.2d 1285, 1287. We review a district court's conclusions of law to determine if they are correct. *Wiley v. Iverson*, 1999 MT 214, ¶16, 295 Mont. 511, ¶16, 985 P.2d 1176, ¶16.

¶11 In District Court, Mary contended that the agreement was unenforceable because she was incapable of understanding it and therefore could not have given the required consent. The District Court held that the agreement was valid and enforceable, because Mary "was mentally competent to understand the Agreement when she signed it." However, Mary contends on appeal that because of her disability, the contract was not valid.

¶12 According to general principles of contract law, the essential elements of a contract are: (1) identifiable parties capable of contracting, (2) consent of the parties, (3) a lawful object and (4) sufficient cause or consideration. *Klawitter v. Dettman* (1994), 268 Mont. 275, 280, 886 P.2d 416, 419, *see also* §28-2-102, MCA. "Any person who manifests assent to a transaction has full legal capacity to incur contractual duties unless he is (1) under guardianship (2) an infant, or (2) mentally ill or defective." *General Motors v. Jackson* (Nev. 1995), 900 P.2d 345, 348-49, citing the Restatement Second of Contracts, §12 (1981). According to *Jackson*, a person is mentally defective for purposes of capacity, when the party, for any reason, is incapable of understanding the force and effect of the alleged agreement. However, a mere mental weakness short of such incapacity will not invalidate a contract because capacity deals with the ability to understand the terms of the document, not a person's actual understanding. *Jackson,* 900 P.2d at 349. Stated differently, "[c]apacity relates to the status of the person rather than the circumstances surrounding the transaction." *Jackson*, 900 P.2d at 349.

¶13 Mary Wilkes is 25 years old. She married Lawrence when she was 21. She graduated from high school, but attended special education classes. She reads and writes poorly but can do so. Her level of proficiency beyond that is difficult to assess because Mary did not offer any expert witnesses who could attest to her skills and intelligence level. The record demonstrates that Mary is capable of driving a car, yet does not have a license. She receives Social Security disability benefits and is unemployed. Whether she would be unable to retain a job is unclear from her testimony. Mary was recently tested to determine her eligibility for continued benefits, however, neither the results of the test, nor testimony from the doctor who administered the tests were admitted into evidence.

¶14 Without any expert testimony or medical evidence, the District Court relied entirely

on lay witness testimony, including Mary's, to determine Mary's level of competency. The Court found that the "burden of proof rests with Plaintiff to establish her incompetence and the Court simply is not satisfied that the burden has been met. . .and [therefore] there is no reason to believe that she would be incapable of understanding her rights under a Prenuptial Agreement . . . ."

¶15 Substantial evidence supports the District Court's findings and conclusion regarding Mary's competence - including testimony from the attorney who prepared the agreement and explained its effect to Mary and testimony from his staff who spoke with her on the day the agreement was executed.

¶16 For these reasons, we conclude that the District Court did not err when it held that the premarital agreement was a valid contract.

## ISSUE TWO

¶17 Did the District Court err when it held that the agreement was not unconscionable in violation of §72-2-224, MCA?

¶18 The District Court concluded that the premarital agreement was valid because there was "more than adequate disclosure and that the Agreement was not unconscionable." Mary disagrees, contending that (1) the Court used an improper standard, (2) fair and full disclosure was not attained and finally, (3) the contract was unconscionable.

¶19 The District Court held that the agreement provided a fair and reasonable disclosure of the Wilkes' property, and cited *Thies v. Lowe* (1995), 273 Mont. 272, 903 P.2d 186 to conclude that fair disclosure was satisfied "by a mere recitation that there had been a full disclosure." However, *Thies* applied §72-2-102, MCA (1979). Section 72-2-102, MCA (1979) has since been renumbered as §72-2-224, MCA (1993), and amended by the Montana Legislature.

¶20 The former statute, §72-2-102, MCA, provided that "[t]he right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property, and family allowance or any of them may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the party waiving *after fair disclosure*." In deciding this case, the District Court cited prior cases that relied on the "after fair disclosure" standard. *See Wiley v. Iverson, Thies v. Lowe* (1995),273

Mont. 272, 903 P.2d 186.

¶21 The amended statute, §72-2-224, MCA, provides that:

(1) The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property, and family allowance or any of them may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the surviving spouse. The written contract, agreement or waiver is enforceable without consideration.

(2) A surviving spouse's waiver is not enforceable if the surviving spouse proves that: (a) the surviving spouse did not execute the waiver voluntarily; or (b) *the waiver was unconscionable when it was executed <u>and</u>, before execution of the waiver, the surviving spouse: (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the decedent*; (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the decedent beyond the disclosure provided; and (iii) did not have or reasonably could not have had an adequate knowledge of the property or financial obligations of the decedent.

(3) An issue of unconscionability of a waiver is for decision by the court as a matter of law.

§72-2-224, MCA. The Uniform Premarital Agreement Act, enacted in 1987, mirrors this language. *See* §40-2-608, MCA.

¶22 The former act simply required that a spouse challenging a premarital agreement prove that he or she had not been provided with fair disclosure prior to its execution. The new law requires the plaintiff to demonstrate that the document was not executed voluntarily or that it was unconscionable when executed *and* fair and reasonable disclosure was not provided. However, unless the contract was unconscionable, it is not necessary to analyze the extend of disclosure since the requirements are stated in the conjunctive.

¶23 Although we have not had previous occasion to define unconscionability in this context, we have had recent occasion to discuss the concept in *In re Marriage of Pearson*, 1998 MT 236, ¶ 30, 291 Mont. 101, ¶ 30, 965 P.2d 268, ¶ 30 (citations omitted), where we

had the following to say in the context of marriage and divorce law:

> There exists no set definition of unconscionability; rather, determinations of unconscionability are made on a case-by-case scrutiny of the underlaying facts. Because a district court's determinations regarding changed circumstances and unconscionability are discretionary, we review these determinations for abuse of discretion.

¶24 In this case, the District Court made the following finding regarding conscionability:

> The Court finds the Prenuptial Agreement is not unconscionable. Wilkes was a relatively old man in poor health when he married Mary. It seemed unlikely that he would survive long, and as it turned out, he did not. It is perfectly logical that Wilkes would want to - and should have the right to - protect the assets he acquired during a lifetime of work, to pass them on to his children. The property on which Wilkes lived when he was married was also the home of two of his children. Mary contributed nothing to whatever assets Wilkes had acquired prior to the marriage. The mere fact that Mary functions at a low intellectual level does not make it less conscionable that she keeps what she brought into the marriage and shares only whatever might have been added to Wilkes's premarital assets during the course of the marriage, if the marriage had lasted long enough for the parties to acquire additional assets. Mary's circumstances are perhaps not enviable in some respects, but her short marriage to Wilkes really has nothing to do with those circumstances.

¶25 After reviewing the record, we conclude that the District Court properly analyzed the issues according to the guidelines set forth in §72-2-224, MCA. Furthermore, we conclude that the findings on which the District Court based its determination of unconscionability are supported by substantial evidence and are not clearly erroneous. Therefore, we conclude that the District Court did not abuse its discretion when it held that the premarital agreement at issue was not unconscionable. Because voluntariness is not an issue, we need not further analyze the agreement pursuant to §§72-2-224, MCA, or 40-2-608, MCA.

¶26 We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

/S/ JIM REGNIER

Justice James C. Nelson specially concurs:

¶27 I concur with our legal analysis and, albeit reluctantly, with the result of our opinion. Nonetheless, I remain troubled that a 62-year-old, sophisticated businessman can take his 21- year-old, developmentally disabled, unsophisticated bride-to-be, to *his* attorney and, in summary fashion and without her being separately represented by counsel, obtain her signature on a prenuptial agreement that effectively divests her of all interest in his property upon his death. If the applicable law included a mandate that a prenuptial agreement must also pass a smell test to be not "unconscionable," this one, most certainly, would fail. Unfortunately for Mary there is no such requirement.

¶28 That said, my main concern from a legal standpoint is that, here, the trial court improperly applied the "after fair disclosure" standard articulated in *Wiley* and *Thies*. Even with this error, however, I do not disagree that the court used enough of the right buzz-words and made sufficient findings to bring this case within the law that actually applies-- § 72-2-224, MCA, and the Uniform Premarital Agreement Act, § 40-2-601 *et seq.*, MCA. Thus, despite its use of the wrong law, the court arrived at a legally supportable result. *See Schmasow v. Native American Center*, 1999 MT 49, ¶ 12, 293 Mont. 382, ¶ 12, 978 P.2d 304, ¶ 12 (stating that "[i]f we agree with the conclusions of the district court, we can affirm the district court's decision, if correct, regardless of its reasons") (citations omitted).

¶29 Nevertheless, trial courts dealing with these sorts of cases in the future should be aware that *Wiley* and *Thies* no longer set out the controlling standards for prenuptial disclosures and waivers of property interests. Section 72-2-224, MCA, and the Uniform Premarital Agreement Act, § 40-2-601 *et seq.*, MCA, are now the controlling authority in these cases, and, in my opinion, while application of these statutes would not change the result here--at least on the evidence presented to the court on Mary's behalf--these laws do provide more stringent procedures and standards for prenuptial disclosures and waivers of property interests than did our previous cases.

¶30 With those caveats, I concur.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray concurs in the foregoing special concurrence.

/S/ KARLA M. GRAY