
DA 06-0482

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 123

IN RE THE MARRIAGE OF
THOMAS DUDLEY GORTON, II,

        Petitioner, Appellee and Cross-Appellant,

  and

GERIANNE ROBBINS,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and for the County of Flathead, Cause No. DR-04-062(B)
                 Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Patrick F. Flaherty, Attorney at Law, Great Falls, Montana

      For Appellee:

          Clifton W. Hayden. Attorney at Law, Whitefish, Montana

                    Submitted on Briefs:  July 18, 2007

                             Decided:  April 15, 2008

Filed:

                _____
                         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Gerianne Robbins (Gerianne) appeals from the decree entered by the Eleventh Judicial District Court, Flathead County, dissolving her marriage to Thomas Dudley Gorton, II (Tom), and dividing the marital estate pursuant to the parties' October 28, 2005 property settlement agreement. Tom cross-appeals from the portion of the decree ordering the parties to pay their respective attorney fees; he also raises a threshold mootness issue. We affirm.

¶2    The restated issues are:

¶3    1. Is Gerianne's appeal moot?

¶4    2. Did the District Court abuse its discretion in determining the settlement agreement was not unconscionable?

¶5    3. Did the District Court abuse its discretion in excluding the proffered testimony of Dr. Annie Bukacek?

¶6    4. Did the District Court err in determining Gerianne had the mental capacity to execute the settlement agreement and was not subject to undue influence?

¶7    5. Did the District Court abuse its discretion by failing to award Tom attorney fees?

**BACKGROUND**

¶8    Gerianne and Tom married in February of 2002. Before the marriage, Gerianne owned a home in Kalispell, as well as a five-acre property near Creston. During the marriage, Gerianne and Tom purchased property in Lakeside together.

¶9    Tom petitioned for dissolution of the marriage in January of 2004, and Gerianne and

2

Tom had a conference (conference)—variously described as a settlement conference and a mediation—on October 28, 2005. Near the end of the conference, the parties' attorneys drafted a settlement agreement, with the understanding that they would add boilerplate language and certain details before submitting it to the District Court for approval. Gerianne, Tom and their respective attorneys signed the drafted settlement agreement (agreement), and the mediator notarized it.

¶10 Among other things, the agreement provided that Gerianne would transfer half of the 5-acre Creston property to Tom and, upon completion of the Creston property transfer, Tom would quitclaim his interest in the marital Lakeside property to Gerianne. The agreement did not address the Kalispell property, but it is undisputed that both parties understood Gerianne would retain it.

¶11 In January of 2006, Tom gave notice of a hearing at which he would ask the District Court to enter a final decree in accordance with the agreement. He later moved to enforce the agreement, and Gerianne responded in opposition.

¶12 The District Court held a hearing in February of 2006. The mediator, Tom, Gerianne and other witnesses testified. Among other things, Gerianne asserted the agreement was unconscionable, she lacked the capacity to contract, she was subject to undue influence when she signed the agreement, and Tom had not disclosed an appraisal of the Creston property before the conference. The District Court excluded Gerianne's proffered testimony of Dr. Annie Bukacek, based in part on Gerianne's failure to disclose certain medical records to Tom.

¶13     On June 9, 2006, the District Court entered a decree of dissolution which approved the agreement. Among other things, the court determined the agreement was not unconscionable, Gerianne had capacity to contract and Gerianne was not subject to undue influence. The court denied Tom's request for attorney fees under the agreement, and ordered the parties to pay their respective attorney fees.

¶14     In the month following entry of the decree, the parties filed their notices of appeal and cross-appeal. On August 2, Tom moved the District Court for an order in aid of execution of judgment. He filed his supporting affidavit which stated he had performed all obligations under the dissolution decree and had entered into an agreement to sell his 2½-acre Creston property, but a title company had communicated it "need[ed] stronger conveyance language in the order [apparently, the decree] to vest in Thomas Gorton's name." On August 3, the District Court entered an order stating the title to the 2½-acre Creston property was vested in Tom and Gerianne was divested of title to it. On August 14, Gerianne responded that she had wished to contest Tom's motion, but the order was signed the day after Tom filed his motion and the property apparently had already sold. Gerianne appeals and Tom cross-appeals.

**DISCUSSION**

¶15     **1. Is Gerianne's appeal moot?**

¶16     Mootness is a threshold issue which, whether raised by this Court *sua sponte* or by a party, must be resolved prior to addressing an underlying dispute. *See Povsha v. City of Billings*, 2007 MT 353, ¶ 19, 340 Mont. 346, ¶ 19, 174 P.3d 515, ¶ 19 (citations omitted);

4

*Billings High Sch. Dist. v. Billings Gazette*, 2006 MT 329, ¶ 12, 335 Mont. 94, ¶ 12, 149 P.3d 565, ¶ 12 (citation omitted). A question is moot when, due to an event or happening, the disputed question has ceased to exist and no longer presents an actual controversy. In other words, a matter is moot when a court cannot grant effective relief or restore the parties to their original position. *Billings High Sch. Dist.*, ¶ 12 (citations omitted).

¶17 Relying primarily on *Turner v. Mountain Engineering and Const., Inc.*, 276 Mont. 55, 63, 915 P.2d 799, 804 (1996), Tom asserts this Court determines whether effective relief may be granted by analyzing whether property has changed hands and whether third party interests are involved. He maintains both factors are satisfied here because he sold the 2½-acre Creston property to a third party and Gerianne did not move to stay the proceedings or post a supersedeas bond. In response, Gerianne relies primarily on *In re Marriage of Dahm*, 2006 MT 230, ¶¶ 35-37, 333 Mont. 453, ¶¶ 35-37, 143 P.3d 432, ¶¶ 35-37, in positing her appeal is not moot because effective relief requires only a return of any excess Creston sale proceeds, and the marital estate distribution remains subject to this Court's order regardless of whether the property is in the form of cash or real estate.

¶18 We need not address our prior cases at length. As noted above, the basic question in analyzing mootness is whether effective relief could be granted. *See Billings High Sch. Dist.*, ¶ 12. If we were to conclude the agreement is unconscionable or invalid, we would remand to the District Court to fashion a remedy which could involve payment from the sale proceeds or other adjustments. We conclude Gerianne's appeal is not moot.

¶19 **2. Did the District Court err in determining the agreement was not**

5

**unconscionable?**

¶20 Section 40-4-201(1), MCA, authorizes spouses contemplating separation or marital dissolution to enter into a written separation agreement. In a dissolution proceeding, the terms of a separation agreement relating to property are binding on the court unless it finds, after considering the parties' economic circumstances and any other relevant evidence produced by the parties, that the agreement is unconscionable. *See* § 40-4-201(2), MCA. We review a district court's determination of whether a property settlement agreement is unconscionable for abuse of discretion. *See In re Marriage of Rolf,* 2000 MT 361, ¶ 20, 303 Mont. 349, ¶ 20, 16 P.3d 345, ¶ 20 (citations omitted).

¶21 In challenging the District Court's determination that the agreement was conscionable, Gerianne primarily focuses on Tom's alleged failure to disclose a $135,000 appraisal of the entire 5-acre Creston property before the conference. She notes Tom's discovery disclosure of an appraiser—different from the one who performed the $135,000 appraisal—and Tom's statement that the appraiser's analysis would be produced upon receipt. She also points to documents reflecting counsel's post-conference communications, which were not introduced into evidence at the hearing and not addressed by the District Court.

¶22 The agreement valued the Creston property at $75,000, apparently based on Gerianne's opinion regarding its value when she and Tom married in 2002. Gerianne asserts her intent in the Creston-Lakeside trade was to give Tom half of the $75,000 Creston property—approximately $37,500 in value—in exchange for getting all of the equity in the

Lakeside property, which she maintains was approximately $38,000. In sum, Gerianne asserts the $60,000 disparity between her $75,000 valuation of the Creston property and the allegedly undisclosed $135,000 appraisal renders the agreement unconscionable.

¶23 The District Court found Gerianne was aware of a $220,000 valuation of the Creston property during the conference, based on real estate flyers advertising two neighboring 2½-acre parcels at $110,000 each—or $220,000 for 5 acres. Gerianne does not contest this finding. Her argument is that she would not have agreed to trade half the Creston property for Tom's interest in the Lakeside property, based on her own $75,000 valuation, if she had known of the $135,000 appraisal. Given Gerianne's undisputed knowledge of the valuation of similar nearby property at $220,000, this argument is specious and warrants no discussion.

¶24 Gerianne also posits that Tom's sale of his 2½-acre Creston parcel for $138,000 was a windfall based on the undisclosed $135,000 appraisal. She cites to *Hess v. Hess*, 580 A.2d 357 (Pa. Super. 1990), a case addressing the sufficiency of the evidence on claims stemming from a spouse's alleged failure to disclose that he was negotiating the sale of property for $800,000 at the same time he entered a property settlement agreement valuing the property at $45,000. *Hess*, 580 A.2d at 358. Gerianne advances no evidence, however, indicating that Tom was negotiating the Creston property sale at the time of the conference, or that the $135,000 appraisal of the 5-acre property had any bearing on Tom's later sale of his 2½-acre parcel for $138,000. Her reliance on *Hess* is misplaced.

¶25 Gerianne also discusses her financial circumstances, but does not challenge the District Court's findings in that regard. In any event, it appears Gerianne's assertions

7

regarding financial circumstances relate to the disparity between the $75,000 valuation and the $135,000 appraisal, addressed above, rather than the overall property distribution.

¶26 Finally, we note Gerianne's reply brief argument that—based on *Richardson v. State*, 2006 MT 43, 331 Mont. 231, 130 P.3d 634—the District Court should have sanctioned Tom for failing to disclose the $135,000 appraisal. We do not address this argument because Gerianne did not request a discovery sanction in the District Court and, thus, the issue is raised for the first time on appeal. *See Jones v. Montana University System*, 2007 MT 82, ¶ 23, 337 Mont. 1, ¶ 23, 155 P.3d 1247, ¶ 23 (citation omitted).

¶27 We hold the District Court did not abuse its discretion in determining the settlement agreement was not unconscionable.

¶28 **3. Did the District Court abuse its discretion in excluding the proffered testimony of Dr. Annie Bukacek?**

¶29 In her response to Tom's motion to enforce the agreement, Gerianne gave notice of her intent to introduce expert testimony from Dr. Bukacek. She provided a copy of Dr. Bukacek's letter stating she had "reviewed [Gerianne's] medical records" of office visits before and after October 28, 2005; the records "testify to a 'massive' amount of stress related to her ex-husband and the up-coming divorce"; and her opinion to a reasonable degree of medical certainty was that Gerianne "did not have the emotional/mental capacity to reasonably enter into a contract the day she signed the settlement agreement."

¶30 In his reply brief filed 12 days before the hearing, Tom noted his earlier request for production of Gerianne's medical records with respect to any health care providers she

8

identified as experts, including Dr. Bukacek. He observed Gerianne's answer to that request was "Geri will provide as best as she can and has already made application to get them," but no records were provided. Tom also asserted that, at Gerianne's deposition, she promised to provide a release for Tom to obtain the records, but he had not obtained the release or the records because the case settled at the conference the next day. Tom argued Dr. Bukacek's testimony should be excluded for violation of M. R. Civ. P. 26.

¶31 Tom objected when Gerianne called Dr. Bukacek to testify at the hearing. The District Court ruled Dr. Bukacek could not testify regarding the records, in part because Tom's counsel raised an issue of nondisclosure over a week before the hearing via his written reply, and the court had not "heard anybody tell me that anything was done to get those [Gerianne's records] to him other than she [Dr. Bukacek] walks in today to testify and she's got them with her." The court denied Gerianne's request to reset the hearing, and allowed Dr. Bukacek to testify solely for the purpose of making an offer of proof.

¶32 On appeal, Gerianne asserts the sanction was too harsh. We review a discovery-related sanction for abuse of discretion. *See Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co.*, 2005 MT 254, ¶ 10, 329 Mont. 38, ¶ 10, 122 P.3d 431, ¶ 10 (citation omitted). We examine whether the sanction relates to the extent and nature of the discovery abuse, relates to the extent of the prejudice to the opposing party resulting from the discovery abuse, and is consistent with consequences expressly warned of by the district court, if a warning was actually issued. *See Culbertson*, ¶ 14 (citation omitted).

¶33 Regarding the extent and nature of the discovery abuse, Gerianne asserts her

discovery abuse is failure to provide the records in the 12 days before the hearing. She observes her counsel's statement at the hearing that the case was "on a real fast track," and notes Tom did not depose Dr. Bukacek. Gerianne advances no authority, however, providing that sanctions are unwarranted if a party fails to comply with a discovery request after another party raises a nondisclosure issue. We conclude the exclusion of Dr. Bukacek's testimony relates to the nature and extent of the discovery abuse.

¶34    With respect to the prejudice factor, Gerianne asserts any prejudice to Tom could have been cured by a continuance of the hearing or of Dr. Bukacek's testimony. Gerianne does not, however, contest that her failure to provide the records impaired Tom's ability to prepare for cross-examination regarding the basis for Dr. Bukacek's opinion. We conclude the second factor concerning prejudice is satisfied here.

¶35    As Gerianne observes, the District Court did not issue a warning; thus, the third factor does not apply here. *See Culbertson*, ¶ 15. We conclude, under our three-factor test, that excluding Dr. Bukacek's testimony was not too harsh a discovery sanction.

¶36    Gerianne also advances cases for the proposition that a trial court may grant a continuance under circumstances similar to those here. The question is not, however, whether the District Court could have granted a continuance in this case which commenced in January of 2004, but whether it abused its discretion in excluding Dr. Bukacek's testimony. Thus, we do not address these cases.

¶37    Finally, Gerianne advances *McGinty v. Superior Court*, 26 Cal. App. 4th 204, 31 Cal. Rptr. 2d 292 (Cal. App. 6th Dist. 1994), and *State ex rel. Public Works Board v. Bragg*, 183

Cal. App. 3d 1018, 228 Cal. Rptr. 576 (Cal. App. 2nd Dist. 1986), in arguing trial courts abuse their discretion when they effectively "gut" a party's case rather than impose a lesser sanction. *McGinty* and *Bragg* are legally and factually distinguishable. Moreover, Gerianne could have prevented the alleged "gutting" by simply making the records available. Instead, she failed to act on Tom's assertion of her nondisclosure.

¶38    We hold the District Court did not abuse its discretion by excluding Dr. Bukacek's testimony.

¶39    **4. Did the District Court err in determining Gerianne had the mental capacity to execute the agreement and was not subject to undue influence?**

¶40    The District Court also determined Gerianne had the mental capacity to contract and was not subject to undue influence. Gerianne asserts error, based primarily on her testimony regarding her physical, mental and financial conditions at the time of the conference. She advances cases from other jurisdictions in which courts have set aside settlement agreements, but does not address the cases in light of Montana law or attempt to analogize them to the present case. Thus, we decline to address those cases.

¶41    Regarding capacity, Gerianne acknowledges that in *Wilkes v. Estate of Wilkes*, 2001 MT 118, ¶¶ 12-16, 305 Mont. 335, ¶¶ 12-16, 27 P.3d 433, ¶¶ 12-16, we affirmed a district court's finding that a person had not, via lay witness testimony, met the burden of proving incompetence or inability to understand her rights under a prenuptial agreement. Gerianne tries to distinguish *Wilkes* on grounds that she attempted to introduce Dr. Bukacek's expert testimony. In Issue 3, however, we concluded the District Court did not abuse its discretion

11

in excluding Dr. Bukacek's testimony as a discovery sanction. Thus, as in *Wilkes*, Gerianne did not present expert testimony. Moreover, the evidence in this case does not suggest Gerianne was unable to understand the agreement terms—indeed, it establishes she proposed some of them, including the Creston-Lakeside trade. We conclude the District Court did not err in determining Gerianne had capacity to contract.

¶42 Regarding undue influence, Gerianne advances part of the statutory definition contained in § 28-2-407, MCA, and sets forth portions of her testimony. She does not, however, address the nonexclusive criteria a court may consider in applying the statute. *See Stanton v. Wells Fargo Bank Montana, N.A.*, 2007 MT 22, ¶ 21, 335 Mont. 384, ¶ 21, 152 P.3d 115, ¶ 21 (citation omitted). In any event, absent developed argument, we cannot conclude Gerianne has established error in the District Court's determination regarding undue influence.

¶43 We hold the District Court did not err in determining Gerianne had the capacity to contract and was not subject to undue influence.

¶44 **5. Did the District Court abuse its discretion by failing to award attorney fees to Tom?**

¶45 On cross-appeal, Tom asserts the District Court erred in denying his request for attorney fees. We review a district court's grant or denial of attorney fees for abuse of discretion. *See In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, ¶ 57, 92 P.3d 1148, ¶ 57 (citation omitted).

¶46 The District Court reasoned that the agreement's attorney fee provision did not apply

12

in an action to determine the conscionability of the agreement, but instead was intended to apply in an action requiring a party to comply with the agreement's terms once it had been adopted by the court. The attorney fee provision states:

> [i]f either party defaults in the performance of this agreement or the terms hereof and the other party is required to enforce the agreement, the prevailing party shall receive all reasonable attorneys fees and costs.

¶47 On appeal, Tom does not address the "default" portion of the attorney fee provision, but asserts he has been "required to enforce" the agreement. He relies on *Marriage of Mease*, ¶ 57, for the proposition that a settlement agreement's attorney fee provision is controlling.

¶48 In that case, a dissolution decree entered by the district court incorporated a settlement agreement which included an attorney fee provision that "[s]hould any action be commenced to enforce, modify, or interpret any provisions contained herein, the court, as a cost of suit, shall award a reasonable attorney's fee to the successful party." *Marriage of Mease*, ¶ 57. Years after entry of the decree, one former spouse moved to force the other's compliance with certain maintenance obligations, the district court granted the motion in its entirety, and we affirmed in part. *See Marriage of Mease*, ¶¶ 13-54, 60. We determined the settlement agreement was controlling regarding attorney fees, and the prevailing spouse was entitled to fees under the contract term. *Marriage of Mease*, ¶ 57.

¶49 The issue in *Marriage of Mease* was whether a party had complied with the terms of a settlement agreement after the agreement had been approved by the trial court. The validity of the agreement was not at issue there, as it is in the present case. Here, Tom moved to

"enforce" the agreement before the District Court approved it. Gerianne responded by challenging the validity of the agreement. While the District Court ultimately rejected Gerianne's challenges, it could not do so prior to taking evidence of the parties' economic circumstances and other relevant matters. *See* § 40-4-201(2), MCA. Despite Tom's characterization of his motion as one for enforcement, Gerianne could not have "defaulted," as contemplated in the attorney fee provision, before the District Court resolved the dispute over whether the agreement was conscionable.

¶50 We hold the District Court did not abuse its discretion by failing to award Tom attorney fees.

¶51 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

14