FILED

July 19 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0639

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 171

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LIN TORGERSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DC 04-041
Honorable David Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Maxwell G. Battle, Jr.; Battle & Edenfield, P.L.L.C.; Kalispell, Montana
(for Lin Torgerson)

            David F. Stufft, Attorney at Law; Kalispell, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; Barbara C. Harris, Assistant
Attorney General; Helena, Montana

Submitted on Briefs:  June 1, 2011

Decided:  July 19, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Lin Torgerson (Torgerson) was convicted of Possession of Unlawfully Killed Wildlife and Unlawful Possession of Bird Parts. After trial, Torgerson filed a motion for the return of property seized during the investigation. The Ninth Judicial District Court, Toole County, denied his motion. Torgerson appeals. We affirm, addressing the following issue:

¶2    *Did the District Court err by denying Torgerson's motion for return of seized property?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    In February 2004, the Department of Fish, Wildlife, and Parks (FWP) received information from Daisy Doane (Doane), Torgerson's former wife, concerning Torgerson's alleged unlawful killing of four whitetail buck deer over a period of several years. After obtaining warrants, game wardens and other law enforcement officers searched Torgerson's residence and family business. Two deer head mounts were seized from the business, and a set of velvet deer antlers and a head mount were seized from his residence. Also seized were a golden eagle skull and feathers from his residence, as well as numerous photographs of Torgerson posing with harvested deer. Torgerson was charged with Count I: Possession of Unlawfully Taken Wildlife, a felony, pertaining to the four deer mentioned above; and Count II: Unlawful Possession of Bird Parts, a misdemeanor. The State valued three of the deer at $500 each, pursuant to § 87-1-111, MCA, and the fourth as a trophy animal valued at $8,000, pursuant to § 87-1-115, MCA.

2

In July 2006, a jury found Torgerson guilty of two misdemeanors: Possession of Unlawfully Killed Wildlife valued at $500.00[1]; and Unlawful Possession of Bird Parts. The District Court sentenced Torgerson to consecutive six month suspended sentences on each of the two offenses, subject to conditions. Torgerson appealed and we affirmed, concluding, inter alia, that the evidence "would allow a rational trier of fact to find Torgerson guilty of unlawful possession of wildlife, beyond a reasonable doubt, of each of the four deer." *State v. Torgerson (Torgerson I)*, 2008 MT 303, ¶ 55, 345 Mont. 532, 192 P.3d 695.

¶4 After trial, Torgerson moved for the return of items seized during the investigation. The District Court ordered the return of all Torgerson's property which had *not* been introduced into evidence at trial. After Torgerson's appeal was initiated, the District Court concluded it had lost jurisdiction to rule on Torgerson's motion as to the property in evidence and ordered such property held by the clerk of court until further order by this Court.

¶5 After Torgerson's convictions were affirmed, the State petitioned the District Court for an order releasing trial exhibits 31-36 to the State. Exhibit 31 is a set of deer antlers in velvet, exhibits 32-34 are deer mounts, exhibit 35 consists of eagle feathers, and exhibit 36 is an eagle skull. The State claimed that the exhibits were parts of animals unlawfully taken. The District Court ordered all the exhibits released to the State, and

---

[1] The verdict form stated: "To the charge of Possession of Unlawfully-Killed Wildlife alleged to have been committed April 6, 2004"; to which the jury foreperson wrote "Guilty." The verdict form then stated: "If the verdict is 'Guilty,' the total value of the animals illegally possessed is"; after which the jury foreperson wrote "$500.00."

FWP took possession of them. Torgerson had not been notified of the State's petition, and he filed a Notice of Pending Motion, seeking a ruling on his earlier filed motion for return of exhibits 31-34. He later sought a hearing. In February 2009, without hearing, the District Court denied Torgerson's motion for the return of exhibits 31-34. The District Court reasoned that it had already considered the seized evidence during Torgerson's sentencing and concluded that this Court in *Torgerson I* had found there was sufficient evidence to convict Torgerson of unlawfully possessing any of the four deer. Torgerson appealed, and this Court vacated the District Court's order, remanding for a hearing. *State v. Torgerson (Torgerson II)*, 2009 MT 402, 353 Mont. 463, 221 P.3d 1182. We reasoned that § 46-5-312(1), MCA, required a hearing to determine possession when a person claims a right to seized property. *Torgerson II*, ¶ 13.

¶6 After remand, Torgerson filed a motion to join his brother, Aron, and Lloyd Torgerson, Inc. to his Motion for Return of Seized Items, arguing that Aron had legally killed the deer making up Exhibit 32 and that items had been seized from Lloyd Torgerson, Inc. The District Court denied the motion, reasoning that while Aron and Lloyd Torgerson, Inc. should receive notice of the hearing, they did not need to be joined as parties because the case was a criminal proceeding against Torgerson only, and they had a right to be heard without becoming parties.[2] The required hearing was held in

---

[2] Aron has also filed a Notice of Appeal, stating he was "the Defendant in that cause of action filed in the District Court of Toole County . . . ." However, as the District Court noted, Torgerson was the defendant in the criminal proceeding, not Aron. Further, while Torgerson's briefing references Aron's asserted involvement in shooting one of the deer, he does not challenge the District Court's denial of Aron's motion to be joined as a party.

4

August 2010, at which one of the game wardens testified. The District Court again denied Torgerson's motion for the return of exhibits. Torgerson appeals.

## STANDARD OF REVIEW

¶7 "The interpretation and construction of a statute is a matter of law which we review de novo to determine whether the district court's interpretation and construction of the statute is correct." *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874 (citations omitted). We review a district court's findings of fact to determine if they are clearly erroneous. *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 24, 358 Mont. 474, 247 P.3d 244 (citation omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misinterpreted the evidence, or if we determine a mistake has been made upon review of the record." *State v. O'Connor*, 2009 MT 222, ¶ 8, 351 Mont. 329, 212 P.3d 276 (citation omitted).

## DISCUSSION

¶8 Section 46-5-312, MCA, provides as follows:

(1) A person claiming the right to possession of property seized as evidence may apply to the judge for its return. The judge shall give written notice as the judge considers adequate to the prosecutor and all persons who have or may have an interest in the property and shall hold a hearing to determine the right to possession.
(2) If the right to possession is established, the judge shall order the property, other than contraband, returned if:
(a) the property is not needed as evidence;
(b) the property is needed and satisfactory arrangements can be made for its return for subsequent use as evidence; or
(c) all proceedings in which the property might be required have been completed.

¶9 Applying this statute, the District Court noted that the issue was "whether a person has a 'right to possession of property seized as evidence' by the State." Torgerson asserts the District Court erred "by creating a previously unheard of 'right to possession standard . . . .'" (Emphasis omitted.) However, the terms of the statute are clear. "(1) A person claiming the *right to possession* of property seized as evidence may apply to the judge for its return. The judge . . . shall hold a hearing to determine the *right to possession*. (2) If the *right to possession* is established . . . ." Section 46-5-312, MCA (emphases added). The statute clearly establishes a requirement that "the right to possession" of seized evidence be established.

¶10 Torgerson next argues that the State must bear the burden of establishing that "the items sought . . . should not be returned," referencing federal authority which has decided similar cases under Fed. R. Crim. P. 41(g).[3] *See e.g. U.S. v. Kaczynski*, 416 F.3d 971, 974 (9th Cir. 2005) (a defendant is presumed to the return of seized property once that property is no longer needed as evidence, and the government bears the burden of proving that it has legitimate reason to retain the property). However, as the District Court noted, "right to possession" does not appear in Fed. R. Crim. P. 41(g). Section 46-5-312, MCA, provides a different process than Rule 41(g), and the federal cases decided thereunder are not persuasive.

---

[3] Fed. R. Crim. P. 41(g): "Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."

¶11 The statute provides that: "A person *claiming* the right to possession of property seized as evidence may apply to the judge for its return." Section 46-5-312(1), MCA (emphasis added). *Black's Law Dictionary* 282 (Bryan A. Garner ed., 9th ed., West 2009) defines "claim" to include a "demand for money, property, or a legal remedy to which one asserts a right." The Commission Comments to § 46-5-312, MCA, at 120 (2010 Annotations), state: "This section is intended to assist people whose property has been seized and held for extended periods without any fault on their part. It sets up machinery whereby *they can demand* and obtain the return of their property." (Emphasis added.) The clear inference of statutory terms and Commission Comments is that the burden of establishing possession is upon the person claiming the property.

¶12 Generally, "[t]he initial burden of producing evidence as to a particular fact is on the party who would be defeated if no evidence were given on either side." Section 26-1-401, MCA. "[A] party has the burden of persuasion as to each fact the existence or nonexistence of which is essential to the claim for relief or defense the party is asserting." Section 26-1-402, MCA. "Under § 26-1-401, MCA, the party asserting a right in any case bears the burden of proving each of the material allegations of his or her cause of action." *Wiley v. Iverson*, 1999 MT 214, ¶ 20, 295 Mont. 511, 985 P.2d 1176 (citation omitted), *superseded by statute as stated in Wilkes v. Estate of Lawrence R. Wilkes*, 2001 MT 118, ¶¶ 19-22, 305 Mont. 335, 27 P.3d 433.[4] Our opinion in *Torgerson II* suggested

_____

[4] *Wiley* interpreted the 1983 version of § 72-2-102, MCA, which did not specify which party bore the burden of proving "fair disclosure" as a precondition to the validity of a waiver in an antenuptial agreement. *Wiley*, ¶ 18. The *Wiley* Court referenced precedent and §§ 26-1-401 and

7

that the burden of establishing the right to possession is on the individual requesting the property, as we remanded for "[a] hearing at which Torgerson has an *opportunity to establish his right to possession* of the seized property . . . ." *Torgerson II*, ¶ 13 (emphasis added). We thus conclude that § 46-5-312, MCA, places the burden of claiming and establishing right to possession of seized property upon the party requesting the property.

¶13 Torgerson argues that release of the property is mandated by the jury verdict in several ways. He first argues that because the verdict form mentions "wildlife" and does not specify deer, "[i]t is not at all clear that the unlawfully killed wildlife upon which the jury convicted Lin Torgerson was in fact a deer," raising the possibility that "all of the deer mounts would be properly returnable" to him. However, not all of these deer mounts are available to Torgerson. At the hearing, Torgerson requested the return of Exhibits 33 and 34 to him and Exhibit 32 to Aron, but not Exhibit 31. Torgerson's decision to forego Exhibit 31 was discussed in the District Court's order, and we do not further entertain any contentions regarding that exhibit.

¶14 Torgerson also asserts that, even if he was convicted of possessing unlawfully killed deer, the jury only "convicted him of possessing at most one such deer," due to the

---

-402, MCA, in holding that the surviving spouse bears the burden of proof under § 72-2-102, MCA (1983). *Wiley*, ¶¶ 19-21. Section 72-2-102, MCA, was renumbered in 1993 to § 72-2-224, MCA, and amended. *Wiley*, ¶ 18; *Wilkes*, ¶ 19. Section 72-2-224(2), MCA, now explicitly provides that "the 'surviving spouse' bears the burden of proving that the 'waiver is not enforceable.'" *Wiley*, ¶ 18 (quoting § 72-2-224(2), MCA (1999)); *see also* § 72-2-224(2), MCA (2009). Section 72-2-224(2), MCA, was also amended to require the surviving spouse demonstrate that the waiver was not executed voluntarily, or that it was unconscionable when executed, and fair and reasonable disclosure was not provided, among other requirements. *See Wilkes*, ¶¶ 21-22.

value of $500 set by the jury. Torgerson characterizes the jury verdict as failing to convict him on three of the deer mounts, and thus argues "[t]here is no legal or factual basis for forfeiture" of those mounts. Torgerson further contends that since the jury set the value of animals illegally possessed at $500, he was "acquitted" of unlawfully killing the trophy deer, which would have been a felony and whose value was set by statute at $8,000. (Emphasis omitted.)

¶15 While there may be cases in which a criminal verdict would be conclusive to issues arising under this statute, the verdict here is not. On the Possession of Unlawfully Killed Wildlife charge, the special verdict form asked whether Torgerson was guilty or not guilty, and then only required the jury to determine the value of the illegally possessed animals, without specifying which animal or animals. As we stated in *Torgerson I*, "[t]he special verdict form did not require the jury to specify the animal or animals as to which it might render a guilty verdict" and "we cannot determine which animal the jury found Torgerson unlawfully possessed." *Torgerson I*, ¶ 50. Application of the verdict here is a speculative exercise, which we decline to undertake.

¶16 Torgerson argues that the District Court "invaded the province of the jury which had already decided that at least three of the Deer Mounts were lawfully possessed." (Emphasis omitted.) As indicated above, the criminal verdict is not conclusive as to which animal Torgerson was convicted of unlawfully possessing and, further, the statute provides that a judge will determine these issues. "A person claiming the right to possession of property . . . may apply to the *judge* for its return," after which the *judge*

9

shall give written notice to all those with an interest in the property and "shall hold a hearing to determine the right to possession." Section 46-5-312(1), MCA (emphasis added). The District Court did not impermissibly invade the province of the jury.

¶17 Similarly, Torgerson contends that the District Court improperly reweighed the evidence from trial. In making its decision, the District Court considered the principle that "[i]f the animal is not taken and tagged lawfully its ownership remains in the state," pursuant to *State ex rel. Visser v. State Fish & Game Comm'n*, 150 Mont. 525, 531, 437 P.2d 373, 376 (1968). The District Court considered all the trial evidence and hearing testimony presented by both Torgerson and the State. The District Court referenced Doane's testimony[5] that the Exhibit 32 mount had velvet scraped off its antlers, she witnessed Torgerson wound the deer with a rifle prior to rifle hunting season, she later saw pictures of the deer with an arrow through its neck, and Torgerson told her that he had scraped off the velvet. The District Court noted that the deer was in Torgerson's possession and he had photographs of it. The District Court accepted Doane's testimony over Aron's claims that he shot the deer with a bow. The District Court found that Exhibit 33 was a deer which Torgerson shot with a rifle while unlawfully using a spotlight before rifle season started—according to both Doane's testimony and her identification of the deer through photos seized from Torgerson, as well as Torgerson's admission on a videotape. As to Exhibit 34, the District Court found that this deer was

---

[5] Doane testified under a grant of immunity. She told the jury she pled guilty to two misdemeanor counts of possession of unlawfully-killed game animals, the mounts seized from her former home shared with Torgerson. *Torgerson I*, ¶ 10.

killed by Torgerson with a rifle before rifle season. Doane was with Torgerson when they first spotted it, she saw it dead the next day, and Torgerson posed with it in photographs. The District Court referenced testimony which indicated all the deer had "hair not common during the hunting season." The District Court determined that Doane's testimony was more credible than Torgerson's and his family members' testimony, due to the other evidence which supported the unlawful taking of the deer.

¶18 The District Court concluded that it "heard all the evidence, saw all the exhibits, and finds that the three deer mounts which Defendant seeks were illegally taken and he is not entitled to their possession." We conclude there was substantial evidence supporting the District Court's determination that Torgerson had no right of possession to any of the exhibits he seeks.[6]

¶19 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

---

[6] In his brief, after arguing for the return of three of the deer mounts, Torgerson contends that "[a]s to the rest of the Exhibits EXCEPT a tape recorder and cash that belongs to Daisy Doane, one deer mount and the bird parts, they should all be returned to" him. However, this issue has already been resolved by the District Court. The District Court's November 2010 Order stated: "IT IS ORDERED that Defendant's motion for return of State's Exhibits 32-34 is DENIED. The Defendant's request for return of *all other seized evidence* now held in evidence is *GRANTED*, except for $400 cash and a tape recorder which shall be given to Daisy Doane at her request." (Emphasis added.)

11